In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2029

WILLIE HENDERSON,

*Plaintiff-Appellant,*

*v.*

KRISTA WILCOXEN, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:14-cv-03327-CSB — **Harold A. Baker**, *Judge*.

SUBMITTED SEPTEMBER 2, 2015— DECIDED OCTOBER 5, 2015

Before WOOD, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. After serving a term in an Illinois state prison for a sex crime, the plaintiff was committed to the Rushville (Illinois) Treatment and Detention Facility, pursuant to the state's Sexually Violent Persons Commitment Act, 725 ILCS 207, a civil, not a criminal, commitment statute.

The plaintiff had a job in the Facility's dietary services department. He alleges, in this suit under 42 U.S.C. § 1983 against four members of the department's staff, that he was fired in retaliation for having filed previous lawsuits against members of the staff. The firing was formally based on disciplinary charges against him, but he alleges that they were trumped-up charges. As required by 28 U.S.C. § 1915(e)(2), the district judge screened the complaint at the outset of the case to determine whether it "fail[ed] to state a claim upon which relief may be granted" by a federal court. § 1915(e)(2)(B)(ii). He ruled that the complaint did fail to state a claim, and dismissed the suit with prejudice.

He announced the dismissal in an order captioned "MERIT REVIEW AND CASE MANAGEMENT ORDER," in which he said that he had dismissed Henderson's initial complaint because it "contained only conclusory allegations. … When asked during the status hearing why the Plaintiff thought retaliation was the motive for his firing, the Plaintiff simply stated he had filed previous lawsuits and assumed people knew about it." Yet later in his order the judge noted that the plaintiff had said he'd filed "many lawsuits" against the members of the Facility's staff, though not until his appeal brief, filed with us, did he attach copies of the grievances that he'd filed with the Facility's administrators before suing (grievances that contain a good deal of detail about his firing) or attempt to explain—in writing in any event—the hardship that he contends the loss of his job in the dietary services department had caused him.

The judge granted leave to file an amended complaint, which the plaintiff did, but the judge dismissed it peremptorily, saying only that "the Plaintiff has simply repeated the

allegations he made both in his first complaint and during the status [i.e., merit-review] hearing"—the hearing of which, as we're about to see, there is no record, and so no basis for assessing the accuracy of the judge's characterization of the plaintiff's remarks at the hearing.

The qualification "in writing in any event" in the preceding paragraph flags the key problem with the district judge's handling of the case. As his reference to "merit review" in the caption of his order hints, the judge screened the complaint—that is, made an effort to determine at the outset of the litigation whether it stated a claim within the meaning of 28 U.S.C. § 1915(e)(2)—by interviewing the plaintiff by telephone. So far as we are able to determine, either no aural recording or written transcript of the telephonic interview was made, or if made retained, and the judge and the plaintiff were the only parties to the call. It was, in short, an inquisitorial hearing. We don't mean it was modeled on procedures employed by the Inquisition. In modern usage an inquisitorial hearing is a hearing in open court in which the judge examines the parties to the suit rather than leaving examination to the lawyers, as in our legal system, which is adversarial rather than inquisitorial. But what the district judge did in this case went beyond the inquisitorial in its modern sense, for it involved examining a party in secret, secrecy being secured by the absence of a transcript, or even a judge's or reporter's notes. Modern inquisitorial proceedings in countries such as France and Germany are not conducted *in camera*. The merit-review hearing in this case was.

In *Williams v. Wahner*, 731 F.3d 731 (7th Cir. 2013), we rejected the use of ex parte telephonic interrogation as a method of screening complaints to determine whether they state a

claim. We didn't mince words. We called the practice "unlawful." 731 F.3d at 733. We said that 28 U.S.C. § 1915A(a), a screening provision similar to § 1915(e)(2), does not "contemplate[] an oral examination of a party by the judge designed to elicit answers that will enable the judge to resolve contestable factual issues. If the validity of a claim depends on the accuracy of the plaintiff's factual allegations, … and their accuracy can't be resolved without an oral hearing, it is a matter to be resolved at trial, in conformity with the procedures that govern trials … ." *Id*. (citations omitted).

We expect that when this court declares a procedure employed by a district judge, or district judges, of this circuit unlawful, the procedure will be abandoned. Regrettably, not all the district judges have abandoned it.

We acknowledge possible confusion resulting from the distinction we drew in *Williams* "between the judge's resolving material factual disputes on the basis of his interrogation of the plaintiff, and … his simply trying to determine what the plaintiff is alleging. Many prisoners can explain themselves orally but not in writing. They may be illiterate in English, or they may simply be such poor writers that they can't convey their thoughts other than orally. So we can understand a judge's wanting to clarify an unclear pro se complaint by interviewing the plaintiff. But the judge must be careful not to allow so innocent an oral examination to molt into a judicial cross-examination designed to elicit admissions … ." *Id*. at 733–34. (The judge should however give serious consideration to the alternative possibility, if he thinks there is a glimmer of possible merit in a largely unintelligible pro se complaint, of recruiting counsel for the limited purpose of helping the prisoner express his complaint intelligi-

bly. Such limited-purpose appointments are not nearly so burdensome for the lawyers concerned as a full-blown appointment; Counsel may even be able to accomplish the task of clarifying the prisoner's complaint without traveling, or without traveling more than once or twice, to the prison or the court.)

That was a fine line we drew in *Williams*, but a necessary one, and one the judge in this case crossed in the wrong direction. For there was no doubt about what the plaintiff was alleging: that he had been retaliated against—fired on the basis of trumped-up disciplinary charges—for having brought civil-rights suits against members of the Facility's staff. The normal next step in the present case would have been the filing by the defendants of an answer to the complaint, followed either by further pleading or by discovery, leading eventually to summary judgment proceedings or to a trial. True, the complaint was barebones—maybe so thin that it could have been dismissed without further ado. Cf. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). We doubt that, however, because in claiming to have been retaliated against for filing repeated lawsuits against members of the staff of the unit that he worked in he was making a plausible claim, and further proceedings would be required to determine its validity. The judge is not to be criticized for giving the plaintiff, unrepresented by counsel and unschooled in legal procedure, an opportunity to amplify his complaint orally, which might provide guidance for the next steps in the lawsuit.

So far, so good. But without any record, no meaningful appellate review of a decision based on a telephonic hearing is possible. Cf. *Budd v. Motley*, 711 F.3d 840, 841–42 (7th Cir.

2013) (per curiam). It's permissible for the judge to interview a pro se detainee plaintiff in order to determine not whether the plaintiff's case is meritorious but simply what that case is. But the judge must ensure that a transcript or recording of the interview be made, lest an interview initially designed just to clarify the allegations of the complaint have molted into a merits hearing because the judge asked the plaintiff not only what he was charging but also what evidence he had to support the charge.

In dismissing Henderson's complaint the judge also relied on an outdated pleading standard for claims of retaliation. He noted that Henderson had failed to allege that "his protected activity was a 'substantial and motivating factor' in any of the adverse actions taken by the defendants." For support he cited *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985), which states that "alleging merely the ultimate fact of retaliation is insufficient." But that standard was implicitly rejected in *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002), and explicitly in *Walker v. Thompson*, 288 F.3d 1005, 1008–09 (7th Cir. 2002), as being inconsistent with notice pleading.

REVERSED AND REMANDED