In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1801

MICHAEL HUGHES,

*Plaintiff-Appellant,*

*v.*

MICHAEL FARRIS and KRISTA WILCOXEN,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 15-3038 — **Harold A. Baker**, *Judge.*

SUBMITTED OCTOBER 29, 2015[*] — DECIDED DECEMBER 7, 2015

Before WOOD, *Chief Judge,* and POSNER and EASTERBROOK,
*Circuit Judges.*

WOOD, *Chief Judge.* Michael Hughes alleges that an em-
ployee of the facility where he is civilly committed abused

  [*] The defendants were not served with process in the district court
and are not participating in this appeal. After examining the appellant's
brief and the record, we have concluded that the case is appropriate for
summary disposition. See FED. R. APP. P. 34(a)(2).

him because he is a homosexual; another employee sus-
pended his treatment for complaining about it. He is con-
fined at the Treatment and Detention Facility in Rushville,
Illinois, as a result of his designation as a sexually violent
person for purposes of Illinois's Sexually Violent Persons
Commitment Act, 725 ILCS 207/1–99. Invoking 42 U.S.C.
§ 1983, Hughes sued Michael Farris, the supervisor of the
laundry, and Krista Wilcoxen, Rushville's rehabilitation di-
rector. After interviewing Hughes at a "merit-review" hear-
ing and screening his complaint under 28 U.S.C. § 1915(e)(2),
the district court concluded that he had failed to state a claim
and dismissed the case. We vacate that judgment and re-
mand.

Without vouching for anything, we recount the allega-
tions in Hughes's complaint and, where consistent with the
complaint, in his related filings. See *Flying J Inc. v. City of
New Haven*, 549 F.3d 538, 542 n.1 (7th Cir. 2008). Hughes was
first abused in 2014, when Farris began supervising Rush-
ville's laundry room. Hughes had been receiving vocational
training in the laundry room as part of his treatment. Farris
berated Hughes with an onslaught of homophobic epithets,
including "sissy, faggot, bitch, whore, slut, and any other
degrading female or homosexual insult one can imagine."
Farris also "encourage[d] other residents to take reprisals
against Plaintiff because he is gay." He urged them "to Ram
broom and/or Mop Handles in the Plaintiff['s] rectum … be-
cause he likes it so much." Hughes lived in constant fear of
violent attack.

Hughes's troubles with Farris came to a head in January
2015. Farris ordered Hughes to "Take Charge" of the laun-
dry room and "Tell these fuckers what they need to be [do-

ing]." Hughes hesitated, reminding Farris that, under his own treatment plan and the rules of Rushville, he was prohibited from asserting authority over fellow detainees. He attempted to show Farris the resident handbook, which contained the rule that Farris was telling Hughes to violate. In response, Farris ordered him to leave the laundry.

When Hughes complained about Farris to Wilcoxen, his situation worsened. Hughes told Wilcoxen that Farris was abusing and threatening him for being gay. But Wilcoxen's practice, Hughes asserts, is to ignore complaints about Farris's conduct and "terminat[e] anyone that has a negative encounter" with Farris. Considering herself "sue proof," Wilcoxen suspended Hughes from vocational training, in the laundry or elsewhere, for three months, to punish him for protesting Farris's abuse. Vocational training, Hughes explains, is part of the treatment that he must complete to be eligible for conditional release. By suspending him from that training, Wilcoxen kept him from "fully participat[ing] in the treatment he was sent to this facility for."

The district judge held a brief telephonic merit-review hearing and dismissed the complaint. (We have previously discussed the proper and improper use of these hearings. See *Henderson v. Wilcoxen*, 802 F.3d 930 (7th Cir. 2015); *Williams v. Wahner*, 731 F.3d 731 (7th Cir. 2013).) The judge asked Hughes if his "main complaint" was that he had been laid off from his job at the laundry. Hughes replied, "No, sir. That's not my main complaint. That is a result, or what triggered me to actually file the complaint." When the judge asked him what constitutional provision he believed the defendants had violated, Hughes answered that he was "sexually harassed" and "punished" for refusing to violate "our

own rules." The court ended the hearing, noting that it "did not see any constitutional violation in this." It then dismissed Hughes's complaint for failure to state a claim. He failed to state a due process claim, the court reasoned, because prisoners do not have a protectable interest in prison jobs, and the court found no equal protection violation. These rulings caused the court to count the dismissal as a "strike" under 28 U.S.C. § 1915(g). It entered judgment under Federal Rule of Civil Procedure 58 the same day.

Hughes appealed and moved to proceed *in forma pauperis*. In his motion, he elaborated his complaint's allegations. He also said that at the merit-review hearing he felt "rushed," "stressed," and "confuse[d]," explaining that he "thought of all kinds of things to say only moments after the phone call had ended." The district court granted Hughes's motion to proceed IFP. It observed that Hughes's new filing "more clearly states his intended claims and it appears he has adequately alleged a violation of his constitutional rights." The court advised Hughes that if he asked the court to reconsider its dismissal, the court would "certify that it would grant the motion upon remand from the court of appeals." As Hughes explains in his appeal brief, he declined the district court's offer because he thought that a district court lacks jurisdiction over a case once an appeal has been filed.

On appeal Hughes argues that the district court erred in dismissing his case. We agree with Hughes that the case must be remanded, but we make two preliminary observations. First, the district court properly attempted to revive the case when, in granting Hughes's motion to appeal IFP, it invited him to move for reconsideration of its dismissal. Dis-

trict courts generally lack jurisdiction over a case on appeal. *Ameritech Corp. v. Int'l Bhd. of Elec. Workers, Local 21*, 543 F.3d 414, 418 (7th Cir. 2008). But the court correctly alluded to its limited authority to state that it would be inclined to grant a motion under Federal Rule of Civil Procedure 60(b), if Hughes chose to file such a motion. See FED. R. CIV. P. 62.1; Cir. R. 57; *Ameritech*, 543 F.3d at 418–19; *Boyko v. Anderson*, 185 F.3d 672, 675–76 (7th Cir. 1999). Courts should grant non-fee-paying plaintiffs, such as Hughes, the same opportunity to amend a dismissed complaint as fee-paying plaintiffs receive. See *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1023–25 (7th Cir. 2013). Hughes says that at his merit-review hearing he felt rushed and confused; afterwards he had more to add, and he elaborated his thoughts in his IFP motion. A chance to amend after the merit-review hearing would have solved that problem and potentially avoided this appeal.

On the merits, we conclude that Hughes has stated a claim against Farris under the Fourteenth Amendment. Civilly committed detainees are entitled to "protection against cruel and inhumane treatment" under the Due Process Clause that is "at least as extensive as that afforded to prisoners by the Eighth Amendment." *Sain v. Wood*, 512 F.3d 886, 893 (7th Cir. 2008). Threats of grave violence can constitute cruel and unusual punishment under the Eighth Amendment. *Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009). And in *Beal v. Foster*, 803 F.3d 356, 357–58 (7th Cir. 2015), we recently held that verbal abuse by guards can be cruel and unusual punishment. That case involved, among other things, calling an inmate "derisive terms" like "punk, fag, sissy, and queer," thereby "increas[ing] the likelihood of sexual assaults on him." *Id.* at 358. Hughes's nearly identical

allegations thus state a claim for a violation of his due process rights under the Fourteenth Amendment. They also state a claim under the Equal Protection Clause of that amendment. The Equal Protection Clause protects against both "sexual harassment by a state actor under color of state law," *Locke v. Haessig*, 788 F.3d 662, 667 (7th Cir. 2015), and discrimination on the basis of sexual orientation, see *Baskin v. Brogan*, 766 F.3d 648, 654–55 (7th Cir. 2014); *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 950–51 (7th Cir. 2002). Both allegedly occurred here.

We also conclude that Hughes may proceed with his claims against Wilcoxen. He asserts that Wilcoxen retaliated against him in response to his complaints about Farris's alleged anti-gay abuse. This suffices to describe another violation of his equal-protection rights. See *Locke*, 788 F.3d at 669–71 (explaining that parole supervisor violates equal protection by retaliating against parolee for complaining about parole officer's sexual harassment). Allegations of retaliation for complaining about abuse support a claim under the First Amendment. See *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). Finally, due process requires that those who are civilly committed as sexually violent persons receive "some treatment," as determined by mental-health professionals exercising professional judgment. *Lane v. Williams*, 689 F.3d 879, 882 (7th Cir. 2012) (quoting *Allison v. Snyder*, 332 F.3d 1076, 1081 (7th Cir. 2003), internal quotation marks omitted). Hughes says that his vocational training is part of his treatment and that Wilcoxen suspended that treatment in order to shield Farris's abuse and to punish Hughes for complaining about it. Those allegations, if proven, would show that Wilcoxen's suspension of Farris's treatment was "a substantial departure from accepted professional judgment" in vio-

lation of the Due Process Clause. See *id.* at 882 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982), internal quotation marks omitted).

We conclude with three final comments. First, we emphasize again that at this stage we have only allegations; further proceedings are needed to determine their truth. Second, we recently specified that merit-review hearings must be transcribed or recorded, *Henderson*, 802 F.3d at 932–33, and so we commend the district court for doing so here. These hearings, nonetheless, may be conducted only for the narrow purpose of enabling a *pro se* plaintiff to clarify and amplify his complaint if it is confusing; the district judge may not use the hearings to cross-examine a plaintiff or elicit admissions. *Id*. at 933. Third, because the district court's dismissal was in error, the record must be corrected to show that Hughes did not incur a strike under the Prison Litigation Reform Act, 28 U.S.C. § 1915(g). We have previously noted in dicta that it is possible that the three-strikes provision does not apply to persons in Hughes's position (sexually violent detainees no longer serving a criminal sentence) because they are not prisoners as defined in § 1915(h). *Kalinowski v. Bond*, 358 F.3d 978, 979 (7th Cir. 2004) (collecting cases where other circuits have held similarly); see also *Merryfield v. Jordan*, 584 F.3d 923, 927 (10th Cir. 2009); *Michau v. Charleston Cnty.*, 434 F.3d 725, 727–28 (4th Cir. 2006). But because we vacate the district court's decision on the merits, we need not resolve this question.

The district court's judgment dismissing the case is VACATED and the case is REMANDED for further proceedings consistent with this opinion.