In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-2655

AMIN IJBARA EQUITY
CORPORATION and AMIN IJBARA,

*Plaintiffs-Appellants*,

*v.*

VILLAGE OF OAK LAWN,
JEAN GALZIN, and LARRY DEETJEN,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 9337 — **Rebecca R. Pallmeyer**, *Judge*.

ARGUED JUNE 2, 2016 — DECIDED JUNE 19, 2017

Before POSNER and SYKES, *Circuit Judges*, and YANDLE, *District Judge*.[*]

SYKES, *Circuit Judge*. Amin Ijbara owned a strip mall in the Village of Oak Lawn, Illinois, but defaulted on his mort-

---

[*] Of the Southern District of Illinois, sitting by designation.

gage payments, precipitating a foreclosure. He blames this misfortune on Oak Lawn officials, accusing them of waging a campaign of regulatory harassment that included frivolous inspections and citations for nonexistent or trumped-up building-code violations, which cost him money and scared off prospective tenants. He filed this suit under 42 U.S.C. § 1983 alleging that this abuse of power violated his right to equal protection of the law.

The district judge dismissed the suit as time-barred. She held that Ijbara's claim accrued when the foreclosure action was filed, or at the very latest, when the judge presiding in that action appointed a receiver to take control of the mall. Ijbara's suit, filed almost three years later, missed the two-year limitations deadline. Ijbara resists this conclusion, arguing that his claim did not accrue until the state court entered final judgment in the foreclosure action. If he's right, the suit was timely and dismissal was improper. He is not right. Ijbara confuses the eventual *consequences* of a constitutional violation with the constitutional *injury* that starts the limitations clock. Ijbara was well aware of his injury and its cause long before the entry of final judgment in the foreclosure proceeding. We affirm.

## I. Background

We take the following narrative from Ijbara's amended complaint, the operative pleading in the case, and accept the factual allegations as true for purposes of the motion to dismiss. Ijbara owned a strip mall in Oak Lawn known as

Central Plaza.[1] In March 2010 two of Ijbara's tenants, James Baker and Gregory Haraf, approached him about renewing their lease. Baker and Haraf operated a convenience store in the mall and had a license to sell liquor. Ijbara refused to renew their lease unless they stopped selling liquor and agreed to carry only groceries, meat, and produce. This naturally upset Baker and Haraf; they threatened to complain to their friends in village government if Ijbara didn't change his mind. Ijbara stuck to his guns.

About a week later, Larry Deetjen, Oak Lawn's village manager, and David Heilmann, the mayor, sent a team of fire inspectors to examine the mall's sprinkler system. The inspectors issued a citation finding code violations and requiring Ijbara to install an expensive new system. He did so, but the inspectors were not satisfied and withheld their approval until additional work was performed, raising the cost from $22,000 to $35,000. Village officials also required Ijbara to upgrade the mall's existing water pipes—at a cost of $12,600—even though the water pipes were code compliant and functioning normally. Later Ijbara heard from one of his tenants that village officials were preparing to order him to repave the mall parking lot (at an estimated cost of $100,000) and install a new roof (another $100,000), both needless repairs.

In November 2010 Heilmann called Ijbara to pressure him to renew the convenience store's lease with no restriction on liquor sales. Ijbara refused to budge. In January

---

[1] His company, Amin Ijbara Equity Corp., actually owned the property. The company is also a plaintiff here, but we do not need to mention it further.

2011 Oak Lawn inspectors issued several more baseless building-code citations. Village officials also slow-walked or blocked the issuance of business licenses to prospective tenants in the mall. Ijbara's existing tenants were pestered with groundless citations for ordinance violations.

This concerted harassment gradually reduced the mall's revenues to a trickle, and Ijbara was unable to make his mortgage payments. On February 22, 2011, his lender initiated foreclosure proceedings in state court, and on April 22 the judge presiding in that action appointed a receiver to take possession of and manage the property. The judge's order authorized the receiver to collect all rents relating to the property; tenants were directed to send their rental payments to the receiver. On July 3, 2012, the judge entered final judgment of foreclosure.

Ijbara filed this § 1983 suit for damages on December 31, 2013. His original complaint raised many claims, but the amended complaint trimmed that number and he now presses only one: a class-of-one equal-protection claim against the Village of Oak Lawn and two of its officials, Deetjen, the village manager, and Jean Galzin, the code enforcement officer.

The defendants moved to dismiss the case. *See* FED. R. CIV. P. 12(b)(6). They argued that the suit was untimely under the two-year statute of limitations applicable to § 1983 actions in Illinois. The district judge agreed, holding that Ijbara's claim accrued, at the very latest, on April 22, 2011. That's when the state court appointed a receiver to assume management of the mall. The judge reasoned that Ijbara was surely aware of his injury by that date. Because he filed this

suit more than two years later, the judge dismissed it as time-barred.

## II. Discussion

A limitations defense is not often resolved on a Rule 12(b)(6) motion because "a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). But dismissal at this early stage is appropriate when the complaint alleges facts sufficient to establish that the suit is indeed tardy. *Id.* at 674– 75. That is the case here, according to the defendants. The district judge agreed, and we review her decision de novo. *Ray v. Maher*, 662 F.3d 770, 772 (7th Cir. 2011).

Ijbara's equal-protection claim is the class-of-one variety. He alleges that Oak Lawn officials singled him out for selective enforcement of building codes and other local ordinances for irrational or improper reasons. Generally speaking, a class-of-one plaintiff must prove that "(1) a state actor has intentionally treated him differently than others similarly situated, and (2) there is no rational basis for the difference in treatment." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). Federal law determines when a § 1983 claim accrues, but the statute of limitations is borrowed from state law. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Illinois the limitations period for personal-injury torts is two years. *Id.* (citing 735 ILL. COMP. STAT. 5/13-202); *see also O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015).

A cause of action accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff

can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (internal quotation marks, citations, and alterations omitted). Accrual "occurs when a plaintiff knows the fact and the cause of an injury." *O'Gorman*, 777 F.3d at 889. Importantly, "[t]he cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace*, 549 U.S. at 391 (quoting 1 CALVIN W. CORMAN, LIMITATION OF ACTIONS § 7.4.1, 526–27 (1991) (footnote omitted)).

Ijbara's amended complaint alleges that the unconstitutional acts of the defendants—the baseless citations and harassment of current and prospective tenants—all occurred before his lender commenced foreclosure proceedings and he lost possession of the mall to the receiver. According to the complaint, these acts inflicted a cognizable injury almost immediately: he was forced to make costly and unnecessary repairs and sustained losses in revenue from tenants. The claim necessarily accrued when these injuries occurred—that is, while he was still in possession of the mall. His legal possession of the mall ended on April 22, 2011, when the receiver was appointed.[2] *See* 31A ILLINOIS LAW AND PRACTICE

---

[2] Ijbara wisely refrains from challenging the district judge's consultation of documents from the foreclosure proceeding. When ruling on a motion to dismiss, the court may consider "documents … attached to the complaint, documents … central to the complaint and … referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Ijbara's amended complaint explicitly refers to the foreclosure action, and the documents clearly come from a source "whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

RECEIVERS § 1 (2011) ("A receiver is an officer of the court, appointed on behalf of all parties to take possession of property and hold it for the benefit of those ultimately entitled thereto.").

So we agree with the district judge that the cause of action accrued not later than the date the receiver was appointed. Ijbara certainly knew of his injury and its cause by then. Indeed, he was aware of the fact and cause of his injury at least two months earlier—on February 22 when his lender initiated foreclosure—and, we might add, much earlier still when his revenues slowed and he was forced to incur unnecessary repair costs. He filed suit on December 31, 2013, well outside the two-year window measured from April 22, 2011.

Ijbara argues, as he did in the district court, that his claim did not accrue until the foreclosure proceedings concluded with the entry of final judgment in July 2012. He relies on our decision in *Hileman v. Maze*, 367 F.3d 694 (7th Cir. 2004), but that case doesn't help him. *Hileman* involved a claim under § 1983 for election fraud against a county clerk and her coconspirators. The police raided the clerk's home and office five days before the election and found a cache of absentee ballots that looked like they had been altered. *Id.* at 695. For reasons unknown, the police returned the seized ballots to the clerk on the day of the election, and she and her coconspirators commingled the falsified ballots with valid ones, changing the outcome of the election. *Id.* at 695–96. We held that the claim accrued when the falsified ballots were commingled with the genuine ballots—not a few days earlier when the police found and seized the ballots. The constitutional injury, we said, was the commingling of the

altered ballots. *Id.* at 698. The seizure of the altered ballots didn't make injury "relatively certain" for claim-accrual purposes; after all, uncovering possible election fraud *before* an election would have been greeted "with a sigh of relief." *Id.* at 699. The constitutional injury occurred when the falsified ballots were actually commingled with valid ballots and counted. *Id.*

Ijbara argues that his injury likewise wasn't "relatively certain" until final judgment was entered in the foreclosure action. Not so. Ijbara's injury was known and certain much earlier when he sustained monetary losses from the spurious citations and the harassment of his tenants. He could have filed suit as soon as these actions were taken. The foreclosure filing and appointment of the receiver are just the *latest* possible accrual dates. Ijbara had a cognizable claim and could have sued far earlier.

The allegations in the amended complaint, together with the filings in the foreclosure action, conclusively establish that Ijbara's claim accrued not later than April 22, 2011. The judge properly dismissed this suit as untimely.

AFFIRMED.