**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 26, 2020[*]
Decided May 4, 2020

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-1434

| | |
|---|---|
| MARIA M. ROSAS, <br> *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 18 C 5340 |
| ADVOCATE CHRIST MEDICAL CENTER, et al., <br> *Defendants-Appellees.* | Gary Feinerman, <br> *Judge.* |

**O R D E R**

Maria Rosas contends that a state agency and others wrongfully institutionalized her ten years ago. The district court correctly ruled that the agency is not a "person" subject to suit and the two-year statute of limitations blocks her claims, so we affirm.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

This case concerns Rosas's two mental health institutionalizations—one in 2009 and another in 2010. (In reviewing her claims, we accept as true her well-pleaded allegations and draw all reasonable inferences in her favor. *See, e.g.*, *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 648 (7th Cir. 2017)). She alleges that in 2009, a neighbor reported to the Chicago police that she had been revving her car engine and throwing rocks at cars and houses. Police arrived and found Rosas in her car, revving the engine, and refusing to leave. Rosas says she was merely trying to warm her car and that when police arrived she feared for her safety and did not want to get out. She denies that she was throwing rocks.

Her first hospitalization occurred next. The police transported Rosas to a medical center, where a doctor diagnosed her with "acute onset psychosis" and "delusional behavior." Rosas was soon transferred to the Madden Mental Health Center, a state psychiatric hospital. She objected to staying there and told staff that she wanted to go home. Medical staff mistreated and over-medicated her, she also alleges. Madden discharged Rosas the next month.

Rosas's second hospitalization occurred the following year after a similar trajectory. Rosas was seen vandalizing cars at an automotive body shop. When she returned to that shop a few days later, the owner called the police. The police officer reported (falsely, Rosas alleges) that she admitted to having mental health issues. She was taken to a hospital briefly, and then, as in 2009, to Madden. There, she refused to sign a "consent for services" but remained there for a week. Rosas alleges that, because of a "conspiracy" to commit her without justification, her experience at Madden exacerbated her depression and "heightened [her] fear of doctors."

Six years later, in 2016, Rosas (with her daughter's help) began investigating her hospitalizations to prepare for this lawsuit. She received her medical and police records in 2017 and sued the next year. Invoking 42 U.S.C. §§ 1983, 1985, and 1986, Rosas alleges that police officers, along with other "known and unknown" co-conspirators, agreed to "exaggerate and fabricate allegations against her and thereby deprive her of her constitutional rights." She further alleges that the staff at the hospitals failed to prevent this abuse. At the outset of the suit, Rosas asked the district court to recruit counsel. She listed 26 calls that she made to lawyers, and their responses. Her submission showed that she did not follow-up on the responses. For instance, Legal Aid Chicago invited her to attend one of its walk-in clinics, but she did not; after Loevy & Loevy said that it did not have native Spanish speakers, she did not tell the firm that she speaks some English;

and after Miner, Barnhill & Galland said that it would call her back, she did not seek a return call. The court denied her motion to recruit counsel, concluding that Rosas had not shown an inability to afford counsel or a reasonable effort to obtain counsel on her own.

The district court later granted defendants' motions to dismiss. It ruled that Madden Health Center was part of a state agency (the Illinois Department of Human Services), and thus was not a "person" under 42 U.S.C. §§ 1983, 1985, or 1986. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71. The claims against the other defendants could not proceed, the court explained, because the statute of limitations blocked them. The statute of limitations for claims under § 1986, which is set forth in the statute itself, is one year; the limitations period for §§ 1983 and 1985 claims, borrowed from Illinois law, is two years. *See Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019) (§ 1983); *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) (§ 1985). The court rejected Rosas's tolling argument: she argued that, until she obtained her medical records in 2017, she did not know the cause of her injuries. The court explained that Rosas did not need those records to know the cause of her injuries, and in any case she had not offered a reason why she could not have obtained them earlier.

On appeal, Rosas first argues that the district court abused its discretion when denying her motion to recruit counsel, but we disagree. Rosas asked for counsel before the defendants had been served. Until defendants have responded to a complaint, the district court faces "the difficulty of accurately evaluating the need for counsel." *Mapes v. Indiana*, 932 F.3d 968, 971–72 (7th Cir. 2019). Furthermore, "[a] litigant's good faith … effort to obtain counsel is a necessary condition to the provision of judicial assistance to recruit a lawyer." *Pickett v. Chi. Transit Auth.*, 930 F.3d 869, 871 (7th Cir. 2019); *see also Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). The district court here reasonably concluded that Rosas failed to show that she made such an effort because she did not follow up on any of her calls, including the potentially promising leads.

Without disputing that the longest limitations period is two years, Rosas next argues that the limitations period should be equitably tolled for two reasons. Both are unavailing. First, she contends that, because of her mental illness, she could not "manage … her estate" (the standard for disability under Illinois's guardianship statute, 5 ILCS 70/1.06), and she did not know that she could sue until 2018. But she did not raise this argument in the district court, so she has forfeited the contention. *See Scheidler v. Indiana*, 914 F.3d 535, 540, 544 (7th Cir. 2019).

Second, she argues that she did not discover her injuries until 2017—when she (with her daughter's help) obtained her records. But a claim accrues "when a plaintiff knows the fact and the cause of an injury." *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017). And Rosas alleges in her complaint that she knew in 2009 and 2010 that Madden and its staff had civilly confined her without adequate justification. Thus, Rosas did not need to obtain any records to know of her alleged injury in 2010, which means that the two-year limitations period ended by 2012. Moreover, even if she needed those records to learn the identities of defendants, she and her daughter did not begin to ask for them until more than six years after 2010, by which time the limitations period had already ended four years earlier. And she did not present to the district court a reason why she or her daughter was prevented from seeking those records earlier. *See Rosado v. Gonzalez*, 832 F.3d 714, 716–17 (7th Cir. 2016). Finally, any asserted ignorance of the legal significance of what she knew back in 2010 does not justify equitably tolling the statute of limitations. *See Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018). Thus, the claims are time-barred. *See Amin Ijbara Equity Corp.*, 860 F.3d at 493; *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (statute-of-limitations defense blocks a claim where "the relevant dates are set forth unambiguously in the complaint"). In addition, in her reply brief, Rosas argues for the first time that she was in fact still disabled until 2017, but she forfeited that point by failing to raise it earlier.

Rosas does not challenge the district court's conclusion that Madden is not a "person" capable of being sued under §§ 1983, 1985, or 1986, so we need not address that part of the court's order.

AFFIRMED