**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 2, 2020*
Decided September 4, 2020

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-2764

| | |
|---|---|
| ARTHUR BEATTY, SR.,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Southern District of Indiana,<br>Indianapolis Division. |
| *v.* | No. 1:19-cv-00622-JRS-DML |
| HENSHAW and HOOLEY,<br>    *Defendants-Appellees*. | James R. Sweeney II,<br>*Judge*. |

**O R D E R**

After another inmate tried to frame him as a snitch to get him attacked, Arthur Beatty, Sr., asked prison officials to investigate and remove that inmate from his dormitory. Not only did the officials refuse, he alleges, they also threatened that if he

---

* The defendants were not served with process and are not participating in this appeal. We have agreed to decide the case without oral argument because the brief and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

continued to press the issue, they would transfer him out of his favorable housing assignment and write him up for unfounded disciplinary violations. Beatty filed suit, alleging that the officials were threatening him to deter protected speech and that they were deliberately indifferent to the risk of violent attacks. The district court ruled that Beatty failed to state a claim and dismissed the case. Because Beatty adequately alleged a violation of his First Amendment rights, we vacate the judgment in part and remand for further proceedings. We affirm the judgment in all other respects.

We set forth the allegations in Beatty's amended complaint and take them to be true for purposes of our review. *O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 618 (7th Cir. 2020). Beatty lives in his prison's, the Correctional Industrial Facility, "Faith Dorm," which, according to a brochure attached to the pleadings, *see Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017), "offers a different and better way to do time" by providing "a safe, peaceful life in prison" focused on one's faith and positive life change. In late 2018, he was having "minor problems" with his cellmates. He confided in his close friend, inmate Utah Dockery. But their friendship deteriorated when Beatty tried to intervene in an argument between Dockery and another inmate, and Dockery incorrectly believed that Beatty sided with his adversary. Meanwhile, prison officials moved Beatty into a different cell with Michael Miller. Beatty and Miller had previously shared a cell and had a contentious relationship.

The next day, another inmate found a note on the floor in a common area of the dormitory. It read: "My cellmate Michael Miller is gone off of his medication and I am afraid he may do something to hurt me. I want him moved immediately!!!" The inmate gave the note to Hooley,[1] a prison counselor, who turned it over to Internal Affairs. All the inmates in the Faith Dorm found out about the note, and Miller assumed that Beatty had written it. But, Beatty says, Dockery was responsible for the note, though it was written by another inmate because Dockery could not write legibly himself. Beatty told Hooley and a prison chaplain, Henshaw, that Dockery had planted the note, putting Beatty at risk of being attacked by Miller for being a "snitch." He also said that other inmates were discussing how to retaliate against him for the note.

Concerned for his safety, Beatty "began to continually contact" Hooley and Henshaw "about the status of the investigation [into the note] and what may be done

---

[1] Neither defendant's first name is in the record.

about removing Dockery from the 'Faith Dorm.'" They promised to "investigate the matter" if they could talk to the inmate who wrote the note for Dockery. The scribe then went to them and explained that he had written the note and that he thought that Dockery had given it to prison officials "a long time ago."

Instead of proceeding with the investigation, however, Hooley and Henshaw began to "thwart and impede" it. They told Beatty that pursuing the matter "is not gonna turn out good for [him]," and that "he should not be 'talking about this anymore or something would happen.'" They also laughed when Beatty reiterated his concerns about potential violence by other inmates, leaving Beatty anxious and with the impression that they would "do nothing" to stop any future attacks. Hooley and Henshaw told Beatty that if he filed a grievance or talked about the note "too much," they would remove him from the Faith Dorm, write disciplinary reports about him, or move him to another unit under the pretense of his "safety concerns."

Because he did not want to lose the benefits of the Faith Dorm program, Beatty refused protective custody and instead "hope[d] that no one would hurt him over the 'note.'" In fact, "[n]o one has hurt him yet." But Hooley and Henshaw allowed Dockery to stay in the Faith Dorm, Beatty says, so that Beatty would either be attacked or incentivized to independently "move off the dorm (and leave his most beneficial programming)." As shown by exhibits to the complaint, Beatty filed grievances about Hooley and Henshaw's failure to investigate the note and their threats against him for speaking up, but his grievances were rejected. Beatty alleged that Hooley and Henshaw's threats have caused him psychological trauma and anxiety, and on appeal he adds that he has lost sleep, lost weight, and "lost faith" in going to prison officials for help.[2]

Based on these allegations, Beatty sued Hooley and Henshaw. In his amended complaint, he alleged that they threatened to retaliate against him in violation of the First Amendment and failed to protect him from potential attacks in violation of the Eighth Amendment. *See* 42 U.S.C. § 1983. (He also sued Dockery but later voluntarily dismissed him from the suit.) The district court dismissed the amended complaint

---

[2] We may consider allegations first raised on appeal if they are consistent with the amended complaint. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 678 n. 21 (7th Cir. 2016).

under 28 U.S.C. § 1915A(b)(1) for failure to state a claim, concluding that Beatty failed to allege a deprivation likely to deter First Amendment activity. It reasoned that Beatty did not have a right to "continually contact" the officials to persuade them to "take [his preferred] remedial action (removal of Dockery from the dorm)" and that Dockery's attempt to label Beatty a snitch did not create a constitutional obligation for officials to investigate. The court further concluded that Beatty did not state an Eighth Amendment claim because the defendants "took reasonable measures to guarantee Beatty's safety."

On appeal, Beatty contends that he adequately alleged a First Amendment claim based on "anticipatory retaliation" because the officials' as-yet-unexecuted threats of unfounded disciplinary charges and moving him out of the Faith Dorm were severe enough to deter an inmate from filing grievances or lawsuits. We have cautioned that referring to "retaliation" in the First Amendment context "divert[s] attention from the rule that both threats designed to deter future speech and penalties for past speech are forbidden." *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). Here, too, the characterization of the claim as backward-looking retaliation distracts from the principle that "the first amendment protects speakers from threats of punishment that are designed to discourage future speech." *Id.* Beatty's claim is no more than a "chilling" claim: that he is being threatened with reprisals to keep him quiet about the defendants' inaction. *See Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). Beatty had to allege only that the "conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity" and that his potential speech was "at least a motivating cause" of the defendants' threat of punishment. *Id.* at 878–79.

We conclude that Beatty stated such a claim by alleging that Hooley and Henshaw threatened to punish him if he continued to ask for protective measures or complained about their alleged refusal to investigate and their threats. Raising concerns about safety or other prison conditions is a "constitutionally protected activity." *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018) (complaints and grievances); *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) (lawsuits). And Beatty sufficiently alleged causation by asserting that Hooley and Henshaw told him they would punish him for complaining or filing a grievance or lawsuit. *See Surita*, 665 F.3d at 879; *Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 446 (7th Cir. 2009) (accepting as true plaintiff's allegation of causal connection).

Further, Beatty alleged a sufficiently serious threat. The district court focused solely on the defendants' refusal to enact Beatty's "preferred solution" (removing Dockery from his orbit). That would indeed be inadequate, *see Holleman*, 951 F.3d at 879, but Beatty alleged more: He was threatened with trumped-up discipline and with an unfavorable transfer if he didn't keep quiet. And "not only actual harms but also threats of harm can deter First Amendment activity." *Douglas v. Reeves*, 964 F.3d 643, 649 (7th Cir. 2020). For example, we have recognized "the coercive nature of threats to withhold even small sums [of money] from prisoners." *Id.*

Although not any threat will meet the threshold, the alleged threats here suffice to support a chilling claim at the pleadings stage. Threats of a transfer that would present a "serious change[] of circumstance," like depriving Beatty of the beneficial Faith Dorm program, could deter an inmate from complaining. *Cf. Holleman*, 951 F.3d at 881 (collecting cases in which transfer constituted adequate adverse action). Likewise, threats to manufacture disciplinary charges could be severe enough to discourage speech. *Cf. Dobbey*, 574 F.3d at 445–47; *Hughes v. Farris*, 809 F.3d 330, 333–34 (7th Cir. 2015). And because the test is objective, it does not matter for purposes of the First Amendment claim whether the threats deterred Beatty's speech. *See Douglas*, 964 F.3d at 646–47.

Beatty further argues that he stated an Eighth Amendment claim because the defendants deliberately refused to protect him from potential attacks. To state a claim, Beatty had to allege that Hooley and Henshaw knew of and disregarded a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Potential attacks from other inmates may constitute a substantial risk of harm. S*ee Helling v. McKinney*, 509 U.S. 25, 33 (1993) (Eighth Amendment protects against future harm to inmates). But, even assuming there was sufficiently definite risk here, Beatty failed to allege that the defendants recklessly disregarded that risk. Refusing his demand to transfer Dockery is not indicative of deliberate indifference. "Prison officials do not violate the Eight Amendment because the mode of protection they offer does not sit well with a prisoner." *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008). Further, Beatty alleges that he was offered, but refused, protective custody. This suggests that, rather than deliberately ignoring the risk, the defendants took "reasonable measures to guarantee [Beatty's] safety." *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018).

The judgment of the district court is AFFIRMED as to the Eighth Amendment claim and VACATED as to the First Amendment claim, and the case is REMANDED as to the First Amendment claim for further proceedings consistent with this order.