Hamilton, Circuit Judge.
Petitioner Scott Schmidt murdered his wife, Kelly Wing-Schmidt. He admitted the murder but tried to rely on the state-law defense of "adequate provocation" to mitigate the crime from first- to second-degree homicide. A state trial judge denied Schmidt the assistance of his counsel while the judge questioned Schmidt in a pretrial hearing on that substantive issue. Under law clearly established by the Supreme Court of the United States, the evidentiary hearing on that substantive issue was a "critical stage" of Schmidt's prosecution. By denying Schmidt the assistance of counsel in that critical stage, the state court violated his Sixth Amendment right to counsel.
The Sixth Amendment guarantees the accused in a criminal case "the Assistance of Counsel for his defence." Because "an unaided layman" has "little skill in arguing the law or in coping with an intricate procedural system," the Supreme Court has long held that the right to counsel extends beyond the trial itself. United States v. Ash , 413 U.S. 300, 307, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). Criminal prosecutions involve "critical confrontations" before trial "where the results might well settle the accused's fate." United States v. Wade , 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The Sixth Amendment therefore guarantees defendants "the guiding hand of counsel" at all " 'critical' stages of the proceedings." Id. at 224-25, 87 S.Ct. 1926, quoting Powell v. Alabama , 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932).
Since Schmidt admitted having murdered his wife, the only substantive issue in the prosecution was whether he acted under "adequate provocation," which in Wisconsin would mitigate homicide from first to second degree. The prosecution opposed Schmidt's intended defense, arguing before trial that he had failed to offer "some evidence" of provocation, which would be sufficient to shift the burden of persuasion to the state to disprove provocation beyond a reasonable doubt. The trial court chose to address this critical substantive issue before trial.
After a hearing where counsel debated the defense's written summary of evidence of provocation, the trial court held an unprecedented ex parte , in camera hearing. The judge allowed Schmidt's counsel to attend the hearing but, critically, did not allow him to speak or participate. Instead, the judge questioned Schmidt directly. After listening to Schmidt's answers, the judge ruled that Schmidt could not present the adequate provocation defense at trial. A jury convicted Schmidt of first-degree intentional homicide, and he was sentenced to life in prison.
*306 Schmidt sought post-conviction relief, and the Wisconsin Court of Appeals held that the trial court did not violate Schmidt's Sixth Amendment right to counsel. That decision was an unreasonable application of clearly established Supreme Court precedent guaranteeing counsel at all critical stages of criminal proceedings, including whenever "potential substantial prejudice to defendant's rights inheres in the particular confrontation." Wade , 388 U.S. at 227, 87 S.Ct. 1926. Schmidt therefore meets the stringent standards for habeas corpus relief under 28 U.S.C. § 2254(d)(1).[1]
I. Factual & Procedural Background
In April 2009, Schmidt shot his wife, Kelly Wing-Schmidt, seven times. She died in their driveway. When police officers arrived, they found Schmidt standing by her body. He quickly admitted he had shot her.
A. The Trial Court Proceedings
Wisconsin charged Schmidt with first-degree intentional homicide. Schmidt never denied shooting and killing Kelly, but he intended to argue at trial that he acted with "adequate provocation." In Wisconsin, adequate provocation is an affirmative defense that mitigates intentional homicide from first to second degree for defendants who "lack self-control completely at the time of causing death." Wis. Stat. §§ 939.44 ; 940.01(2)(a). To be "adequate," the provocation must be "sufficient to cause complete lack of self-control in an ordinarily constituted person." § 939.44. If the defendant can produce "some" evidence supporting adequate provocation before trial, then the defendant may introduce evidence of the defense at trial. State v. Schmidt , 344 Wis.2d 336, 824 N.W.2d 839, 843 (Wis. App. 2012), citing State v. Head , 255 Wis.2d 194, 648 N.W.2d 413, 439 (2002). The prosecution must then disprove the defense beyond a reasonable doubt. Schmidt , 824 N.W.2d at 843, citing Head , 648 N.W.2d at 437-38.
Schmidt filed a pretrial motion disclosing that he would present evidence of provocation through "false allegations, controlling behaviors, threats, isolation, unfaithfulness, verbal abuse and arguments." Schmidt planned to present evidence that his wife had abused him emotionally and physically throughout their marriage. He would have testified that right before the shooting, he and Kelly had a heated argument in which Kelly taunted him about an affair he had just discovered, told him their children were not actually his, and threatened to make up stories so that he would never see their children again. According to Schmidt, he lost self-control and shot his wife. The State objected to the evidence, arguing that Schmidt's disclosure lacked specificity and that the circumstances did not support an adequate provocation defense. The State also argued that Schmidt did not clarify the timeframe covered by his proposed evidence and that evidence dating back too far would be irrelevant and prejudicial.
The court acknowledged the State's concerns. Over Schmidt's objection, the court scheduled a hearing to determine whether Schmidt had met the some-evidence standard and could present the defense at trial. Before the hearing, Schmidt submitted *307 two documents: an offer of proof summarizing the testimony of twenty-nine potential witnesses and a legal analysis of the provocation defense with a timeline of events from 2004 through the 2009 shooting.
The evidentiary hearing began in court with Schmidt, his lawyer, and the prosecutor present. The judge was not prepared to decide on the paper submissions alone whether Schmidt could meet the "some evidence" threshold for the provocation defense. Schmidt's lawyer objected to having to expose his defense evidence before trial. The judge decided that he should question Schmidt ex parte to assess the provocation defense. Schmidt's counsel agreed that if the court intended to question Schmidt, it should do so in chambers outside of the prosecutor's presence. The court then proposed to the prosecutor that Schmidt's counsel would attend the hearing in chambers, but would "just be present" and "not saying anything." The prosecutor agreed. Schmidt's counsel did not object, but nobody asked Schmidt if he was willing to go forward in this hearing, so critical to his fate, without the assistance of his lawyer.
The trial judge, court reporter, Schmidt, and Schmidt's counsel proceeded to the judge's chambers. The judge stated that Schmidt "appears in person" and that "his attorney is also present but is not participating in the hearing." The court then asked Schmidt an open-ended question about what was on his mind when he shot Kelly. Schmidt gave the first of what would be several rambling narrative responses:
The day I went over was April 17th. I hadn't slept in at least a week, week-and-a-half. And I-it was like two days before that, I believe the 14th of April, the 14th or 15th of April I think it was, that I found an e-mail on my work computer from a-of a reservation for my wife and a guy that she supposedly was a friend with that worked for Gold Cross Ambulance. And I found that when I was at the fire station. I knew of him, up until that point, that they were friends.
Um, I had been out of the house for a couple of weeks. And I walked there. I went to the fire station, and I walked up to the house, because I knew there were some issues with, um, Kelly had threatened to take-these aren't my f'ing kids, that if she saw me at the house that she didn't want-I wasn't going to be part of the kids' lives anymore, our two youngest children. I just had a feeling that she'd probably call the cops if I pulled in the driveway. So I parked at the station, Fire Station 6, over on Lightning, and I walked to the house.
Actually, my main goal was, um, I had a job to do. I was going to build a house for a retired battalion chief up in Door County. And all my tools, my job trailer, and everything was at our house on JJ on Edgewood. I was at the time staying out at the lake-the lake house that I had-had owned prior to us being married in Stockbridge. And there's-I didn't have any heat, slept on the couch, there was no blankets. I mean, it was-there were no dishes. I had-everything was-the house was empty. Gas was actually shut off because we-instead of paying the bills there, I wanted to make sure the bills were paid where the kids and Kelly were at....
That first answer continued for fourteen transcript pages. Thus began what the Wisconsin Court of Appeals called a "rambling narrative" that spans thirty-five transcript pages. Schmidt , 824 N.W.2d at 847. The trial court asked Schmidt the same open-ended question about his mental state six times. Each time Schmidt's response was unfocused and confused with irrelevant details.
*308 Near the end of the questioning, the judge took a short break for a telephone call. Schmidt's lawyer asked if he could talk to Schmidt. The judge responded that they should limit discussion to reviewing the written offer of proof. After the break, the judge asked Schmidt a few more questions before ending the hearing. Later that day, the court orally announced that "the circumstances that led to the death of Kelly Wing did not involve a provocation" and denied Schmidt's motion to present the defense at trial, rejecting it conclusively.
B. Post-conviction Processes
A jury convicted Schmidt of first-degree intentional homicide.[2] Schmidt moved for a new trial, arguing that he had been denied his Sixth Amendment right to counsel and his Sixth and Fourteenth Amendment right to present a defense. The trial court denied the motion, concluding that Schmidt had not met his burden of production to present the adequate provocation defense. The trial court also concluded that Schmidt was not denied counsel at the ex parte hearing because his counsel submitted the written offer of proof, made an oral argument, and conferred with Schmidt during the recess for the judge's telephone call.
Schmidt appealed, and the Wisconsin Court of Appeals affirmed. The Court of Appeals found that Schmidt had not met the some-evidence standard, though the court called it "a close question." The court found that the ex parte interrogation was a valid exercise of the trial judge's discretion under state law. Turning to the Sixth Amendment question, the Court of Appeals found that the ex parte hearing was not a critical stage of the proceedings at which Schmidt was entitled to counsel. The court also reasoned that the hearing was not adversarial and that counsel was available to advise Schmidt. The court did not reach Schmidt's claim that the hearing violated his right to present a defense. The Wisconsin Supreme Court denied review.
Schmidt then sought habeas corpus relief in federal court, raising the Sixth and Fourteenth Amendment claims. The district court denied relief on both. The district court considered de novo Schmidt's claim that he was denied the right to present a defense and concluded that the Wisconsin evidence law did not deprive him of that right because it protected a legitimate interest and was not arbitrary or disproportionate. The court next found that the deferential standard of review under the Antiterrorism and Effective Death Penalty Act (AEDPA) governed the Sixth Amendment claim. See 28 U.S.C. § 2254(d). The district court concluded that the Wisconsin Court of Appeals decision was not contrary to or an unreasonable application of Supreme Court precedent guaranteeing criminal defendants counsel at all critical stages. The district court therefore denied habeas relief but granted a certificate of appealability on both issues.
II. Analysis
The Wisconsin Court of Appeals rejected Schmidt's Sixth Amendment claim on the merits, and the facts are not disputed. Under AEDPA, a federal court therefore cannot grant a writ of habeas corpus on that claim unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is unreasonable if it correctly *309 identifies the controlling Supreme Court precedent but "unreasonably extends" that "legal principle" to "a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams v. Taylor , 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). To obtain federal relief, Schmidt must show that the state court decision was not just incorrect but "objectively unreasonable." Id. at 409-10, 120 S.Ct. 1495 ; accord, e.g., Woodford v. Visciotti , 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam). This standard is meant to be "difficult to meet." Harrington v. Richter , 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).
Even under this deferential standard, Schmidt is entitled to a writ of habeas corpus. The state-court decision was an objectively unreasonable application of Supreme Court decisions on the right to counsel. The ex parte hearing was a critical stage of the proceeding. Schmidt was guaranteed "the guiding hand of counsel" throughout it, see Powell , 287 U.S. at 69, 53 S.Ct. 55, but he did not have that guidance because of the judge's ground rules for his inquisition of Schmidt, barring his counsel from participating. Because we grant Schmidt's petition based on the violation of his right to counsel, we do not reach his claim that the trial court also denied his right to present a defense.
A. "Critical Stage"
The Sixth Amendment guarantees that in "all criminal prosecutions, the accused shall enjoy the right" to "have the Assistance of Counsel for his defence." The Supreme Court has long recognized that the right applies not only at trial but also at all "critical stages" of the adversary process. The first question in this case is the scope of the Supreme Court's precedents on what constitutes a "critical stage."
A brief look at the history of the Sixth Amendment provides helpful context for understanding the scope of a defendant's right to counsel in pretrial proceedings. In United States v. Wade , 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Supreme Court explained:
The Framers of the Bill of Rights envisaged a broader role for counsel than under the practice then prevailing in England of merely advising his client in 'matters of law,' and eschewing any responsibility for 'matters of fact.' The constitutions in at least 11 of the 13 States expressly or impliedly abolished this distinction. Powell v. State of Alabama , 287 U.S. 45, 60-65 [53 S.Ct. 55] ; Note, 73 Yale L.J. 1000, 1030-1033 (1964). 'Though the colonial provisions about counsel were in accord on few things, they agreed on the necessity of abolishing the facts-law distinction; the colonists appreciated that if a defendant were forced to stand alone against the state, his case was foredoomed.' 73 Yale L.J., supra , at 1033-1034. This background is reflected in the scope given by our decisions to the Sixth Amendment's guarantee to an accused of the assistance of counsel for his defense. When the Bill of Rights was adopted, there were no organized police forces as we know them today. The accused confronted the prosecutor and the witnesses against him, and the evidence was marshalled, largely at the trial itself. In contrast, today's law enforcement machinery involves critical confrontations of the accused by the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality. In recognition of these realities of modern criminal prosecution, our cases have construed the Sixth Amendment *310 guarantee to apply to 'critical' stages of the proceedings. The guarantee reads: 'In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence .' (Emphasis supplied.) The plain wording of this guarantee thus encompasses counsel's assistance whenever necessary to assure a meaningful 'defence.'
388 U.S. at 224-25, 87 S.Ct. 1926 (footnotes omitted, emphasis added).
The Court has identified two historical reasons for the right to counsel. First was the development of an "intricate procedural system." United States v. Ash , 413 U.S. 300, 307, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). As the Court explained:
A concern of more lasting importance was the recognition and awareness that an unaided layman had little skill in arguing the law or in coping with an intricate procedural system. The function of counsel as a guide through complex legal technicalities long has been recognized by this Court. [...] The Court frequently has interpreted the Sixth Amendment to assure that the 'guiding hand of counsel' is available to those in need of its assistance.
Id. at 307-08, 93 S.Ct. 2568. Second was the development of the public prosecutor: "Another factor contributing to the colonial recognition of the accused's right to counsel was the adoption of the institution of the public prosecutor from the Continental inquisitorial system." Id. at 308, 93 S.Ct. 2568. "Thus, an additional motivation for the American rule" that a criminal defendant is entitled to counsel "was a desire to minimize imbalance in the adversary system that otherwise resulted with the creation of a professional prosecuting official." Id. at 309, 93 S.Ct. 2568. An uncounseled defendant could not be expected to argue his case, navigate the rules of evidence, or articulate his defenses with the same skill as an "expert adversary," the prosecutor. Id. at 310, 93 S.Ct. 2568.
Over time, the same became true of various pretrial steps in prosecutions. With increasing frequency, defendants confronted issues before trial that previously would have surfaced at trial-issues like articulating defenses or disputing the admissibility of evidence. With the history of the Sixth Amendment in mind, the Court has repeatedly applied the right to counsel to these critical confrontations "that might appropriately be considered to be parts of the trial itself," that is, steps when "the accused was confronted, just as at trial, by the procedural system, or by his expert adversary, or by both." Id. at 310, 93 S.Ct. 2568. The Court has called these confrontations "critical stages." See, e.g., Wade , 388 U.S. at 224, 87 S.Ct. 1926 ; Hamilton v. Alabama , 368 U.S. 52, 53-54, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).
It is clearly established that criminal defendants are entitled to counsel at all critical stages of the criminal process, and the case law on which stages are critical is extensive. The State relies here on Carey v. Musladin , 549 U.S. 70, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006), which explained that "clearly established Federal law" under § 2254(d)(1) includes only the Supreme Court's holdings, not its dicta. Id. at 74, 127 S.Ct. 649. In Carey , the Court rejected a Ninth Circuit decision for reading Supreme Court precedent at too high a level of generality. Id. at 75-76, 127 S.Ct. 649. Wisconsin uses Carey to argue that no clearly established federal law applies to this case because the Supreme Court has not held that a hearing like the extraordinary ex parte , in camera hearing here is a critical stage.
AEDPA deference does not go so far. A few months after deciding Carey , the Court clarified that AEDPA does not require "federal courts to wait for some *311 nearly identical factual pattern" before granting relief. Panetti v. Quarterman , 551 U.S. 930, 953, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007), quoting Carey , 549 U.S. at 81, 127 S.Ct. 649 (Kennedy, J., concurring in judgment); see also Williams , 529 U.S. at 407, 120 S.Ct. 1495 (holding that state courts can unreasonably apply clearly established federal law to facts the Supreme Court has not considered). "Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts 'different from those of the case in which the principle was announced.' " Panetti , 551 U.S. at 953, 127 S.Ct. 2842, quoting Lockyer v. Andrade , 538 U.S. 63, 76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).
What matters here is what the Supreme Court has done and what it has said in deciding its many "critical stage" cases, which we address next. Also, it is not surprising that the Supreme Court has not considered an ex parte , in camera hearing on a substantive issue quite like this one. "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." United States v. Cronic , 466 U.S. 648, 655, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), quoting Herring v. New York , 422 U.S. 853, 862, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). In this case the trial court improvised an unprecedented procedure that both abandoned that "very premise of our adversary system of criminal justice" to question the defendant directly and prohibited defense counsel from participating. While trial judges have discretion to question witnesses directly, this inquisitorial procedure in which defense counsel is silenced is not compatible with the American judicial system. See Williams v. Wahner , 731 F.3d 731, 732-33 (7th Cir. 2013) (declaring unlawful a federal judge's practice of questioning prisoner-plaintiff in ex parte hearing to decide material factual disputes against the plaintiff, and comparing procedure to inquisitorial procedures from European legal systems). As the Herring Court explained further: "the right to the assistance of counsel has been understood to mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process that has been constitutionalized in the Sixth and Fourteenth Amendments." 422 U.S. at 857, 95 S.Ct. 2550, quoted in Cronic , 466 U.S. at 656 n.15, 104 S.Ct. 2039.[3]
1. Confrontation
Turning first to what the Court has actually done, as the State conceded at *312 oral argument, the Court has treated as a "critical stage" every stage of the criminal process between arraignment and appeal that addresses a substantive issue or risks loss of procedural rights. As examples, the Court has recognized the following as critical stages: a preliminary hearing at which defendant could cross-examine witnesses and otherwise test the evidence against him; arraignments at which defenses must be asserted; entry of a plea; pretrial identification through an in-person line-up; pretrial interrogation by a government informant; sentencing hearings; and deferred sentencing hearings that revoke probation. See Coleman v. Alabama , 399 U.S. 1, 9, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (plurality); id. at 11, 90 S.Ct. 1999 (Black, J., concurring) (preliminary hearing where defendant could test evidence to avoid indictment and build record for trial); Hamilton , 368 U.S. at 54, 82 S.Ct. 157 (arraignment where defenses can be "irretrievably lost, if not then and there asserted"); White v. Maryland , 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (entry of plea); Moore v. Michigan , 355 U.S. 155, 156, 159, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957) (entry of plea); Wade , 388 U.S. at 236-37, 87 S.Ct. 1926 (pretrial in-person identification); Massiah v. United States , 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (pretrial interrogation); Townsend v. Burke , 334 U.S. 736, 740-41, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) (sentencing); Mempa v. Rhay , 389 U.S. 128, 137, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) (deferred sentencing and revocation of probation).
The sheer number and range of these cases show that the right to counsel at "critical stages" is not narrow and fact-bound. The Court has explained its decisions by focusing on the consequences of the particular stage, and in particular on consequences for the defendant's ability to receive a fair trial. In Wade , the Court summarized:
In sum, the principle of Powell v. Alabama and succeeding cases requires that we scrutinize any pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice.
Wade , 388 U.S. at 227, 87 S.Ct. 1926. In Mempa v. Rhay , the Court summarized its precedents as "clearly stand[ing] for the proposition that" counsel is "required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." 389 U.S. at 134, 88 S.Ct. 254. In Coleman v. Alabama , the Court quoted the above passage from Wade and referred to it as a "test" that the Court had consistently applied throughout its critical-stage precedents. 399 U.S. at 8, 90 S.Ct. 1999. And in Ash , the Court stated that its "review of the history and expansion of the Sixth Amendment counsel guarantee" demonstrated "that the test utilized by the Court has called for examination of the event in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary." 413 U.S. at 313, 93 S.Ct. 2568.
It is true that many of the Court's "critical-stage" cases address direct confrontations between the defendant and the professional prosecutor, and that the prosecutor was not in the room for the hearing at issue in this case. See, e.g., Coleman , 399 U.S. at 9, 90 S.Ct. 1999 (preliminary hearing where defendant could test prosecutor's evidence before trial);
*313 Mempa , 389 U.S. at 137, 88 S.Ct. 254 (deferred sentencing hearing where prosecutor argued for revocation of probation). That is typically how proceedings are held when the rules of adversarial proceedings are followed, but the Supreme Court's clearly established precedent is not limited to adversarial confrontations where the prosecution and/or police are literally in the room with the accused. We cannot imagine that the Supreme Court would tolerate a procedure in which the trial judge, without a valid waiver of the right to counsel, took the defendant alone into chambers for questioning on the record on any substantive issue. The result is no different here, where the lawyer was physically present but prohibited from speaking or otherwise participating.
First, in Estelle v. Smith , 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the Court held that a trial judge had violated the accused's right to counsel in a non-adversarial setting where the prosecutor was absent. The judge "informally ordered" a psychiatrist to examine the accused to determine competency to stand trial. Id. at 456-57, 457 n.1, 101 S.Ct. 1866. The defendant was found competent to stand trial and then found guilty at trial. At the penalty phase of the trial, the judge then allowed the state to offer the contents of the interview and the psychiatrist's opinion to prove future dangerousness. The defense lawyer had not been notified in advance that the psychiatric examination would take place, let alone that it would include the issue of future dangerousness. Id. at 470-71, 471 n.15, 101 S.Ct. 1866. The accused did not have his assistance in deciding whether to submit to the examination. Id. at 471, 101 S.Ct. 1866. The Supreme Court held (unanimously) that the judge's nonadversarial decision to order the psychiatric interview-with only the accused and the psychiatrist present-was a critical stage of the proceedings and that the accused had a right to a lawyer in deciding whether to submit to it. Id. at 470-71, 101 S.Ct. 1866.[4] Critically, the Court held that the defendant was entitled to counsel's advice before the interview itself, because it "follows logically" from the Court's "precedents that a defendant should not be forced to resolve such an important issue 'without the guiding hand of counsel.' " Id. at 471, 101 S.Ct. 1866, quoting Powell , 287 U.S. at 69, 53 S.Ct. 55. Resolving that issue-whether to submit to the evaluation-did not involve an in-person confrontation with the prosecutor, the police, or any other agent of the state.
Similarly, in Geders v. United States , the Court found that the defendant's right to counsel had been violated when, during trial, the judge ordered the defendant not to consult with his attorney during an overnight recess. 425 U.S. 80, 81, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). The trial itself, of course, is a stage in the criminal process where the defendant has a right to counsel (and the Court therefore did not need to engage in a critical-stage analysis). But the overnight recess was not a formal part of the trial proceedings and did not occur in the courtroom or in the prosecutor's presence. Yet the defendant did not lose his right to counsel when he left the courtroom and the traditionally adversarial setting. He required his counsel's guidance overnight to make tactical decisions in light of the proceedings against him. Id. at 88-89, 91, 96 S.Ct. 1330. Importantly, the Court did not analyze the overnight recess as a separate stage that may or may not be critical by itself. Underlying both Smith *314 and Geders is the recognition that the accused needs and is entitled to the assistance of counsel in making choices throughout the prosecution, regardless of whether the precise moment in question is "adversarial" in the sense that the professional prosecution or police are literally in the room at the time.
More generally, the Court has repeatedly applied the "critical stage" analysis by focusing on the consequences the accused faces in the particular stage of the case, not necessarily on whether the prosecution or police are in the room. That is clear from the critical "or" in Ash : "This review of the history and expansion of the Sixth Amendment counsel guarantee demonstrates that the test utilized by the Court has called for examination of the event in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary." 413 U.S. at 313, 93 S.Ct. 2568 (emphasis added).
Confirming the importance of that "or" in Ash , the Court has recognized as critical stages several proceedings that require defendants to make procedural decisions. In those cases, it was the defendant's inability to cope with the procedural system-not any face-to-face confrontation with the prosecutor-that drove the Court's holdings. See, e.g., Hamilton , 368 U.S. 52, 82 S.Ct. 157 (finding Alabama arraignment a critical stage because the defendant had to assert or forfeit defenses, without any mention of prosecutor or contested issues); White , 373 U.S. 59, 83 S.Ct. 1050 (finding Maryland preliminary hearing a critical stage because defendant had to enter a plea, without any mention of prosecutor or contested issues); Smith , 451 U.S. 454, 101 S.Ct. 1866 (finding decision to submit to psychiatric evaluation on competence to stand trial a critical stage, without any mention of prosecutor or contested issues).
And this makes sense. When a defendant confronts a purely procedural question-even outside of the courtroom and outside of the prosecutor's presence-he does so in response to the adversary proceedings that the prosecution has brought against him. One motivation for the right to counsel "was a desire to minimize the imbalance in the adversary system ," which recognizes that a layperson does not have the same skill or knowledge necessary to navigate the law. Ash , 413 U.S. at 309, 93 S.Ct. 2568 (emphasis added). After all, requiring an uncounseled defendant to make a consequential procedural decision can easily undermine the desired balance between the prosecutor and the accused, prejudice the defense, and reduce "the trial itself to a mere formality." Wade , 388 U.S. at 224, 87 S.Ct. 1926 (explaining that goal of right to counsel at critical stages is to preserve the integrity of the trial).
By looking both at what the Supreme Court has done and at what it has said, it is clear that an evidentiary hearing on a contested substantive issue is a critical stage of the proceedings. There is no reason to think the result is different when the judge moves half of the hearing into chambers and elicits, through the judge's own questioning, the defendant's rebuttal to the prosecutor's opposition. Against the weight of the many cases finding pretrial stages were critical as long as the accused might face serious consequences affecting the fairness of the trial, the State has not identified any Supreme Court case even suggesting, let alone holding, that a hearing comparable to the one in this case was not a critical stage.
The Court has found stages not critical only when they are non-adversarial and there is no risk that an accused might make mistakes that a lawyer cannot cure before or at trial. In Ash itself, for example, the Court distinguished between an *315 eyewitness identification by in-person lineup, which Wade held is a critical stage, and a witness's identification by looking at a photographic array, which is not. 413 U.S. at 317, 93 S.Ct. 2568. At a line-up, the defendant is present and confronts either law enforcement or the prosecutor. Without counsel's observation and guidance, "there is a grave potential for prejudice" because the uncounseled defendant is unable to identify a suggestive procedure and unlikely to be able to reconstruct a biased procedure at trial. Wade , 388 U.S. at 230-32, 236, 87 S.Ct. 1926. A photographic array, by comparison, is only non-adversarial gathering of evidence outside of the defendant's presence. There is "no possibility" that "the accused might be misled by his lack of familiarity with the law or overpowered by his professional adversary." Ash , 413 U.S. at 317, 93 S.Ct. 2568. The Court reached a similar conclusion in Gerstein v. Pugh when it found that the probable cause determination, by itself, is not a critical stage. 420 U.S. 103, 120, 122, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Probable cause is typically decided "by a magistrate in a nonadversary proceeding on hearsay and written testimony." Id. at 120, 95 S.Ct. 854. It does not require the defendant's participation and its outcome cannot "impair defense on the merits." Id. at 122, 95 S.Ct. 854.
The Supreme Court has clearly established that the right to counsel extends to a pretrial evidentiary hearing on a contested, substantive issue, where an uncounseled defendant risks decisive consequences for his prospects at trial. E.g., Coleman , 399 U.S. at 9, 90 S.Ct. 1999 (plurality); id. at 11, 90 S.Ct. 1999 (Black, J., concurring); Wade , 388 U.S. at 227, 236-37, 87 S.Ct. 1926. In this case, the Wisconsin Court of Appeals correctly recognized the general rule that the Sixth Amendment guarantees counsel at all critical stages. But the court strayed in finding that the ex parte hearing was not a critical stage in Schmidt's case.
The state court's observation that the ex parte , in camera proceeding was not adversarial, in the sense that the prosecutor was not in the room, thus missed the point. It unreasonably applied Supreme Court precedent and, frankly, ignored reality in favor of a formalism that the Court has not adopted. The ex parte , in camera hearing was not a distinct stage in Schmidt's case. It was part of the evidentiary hearing the court held to address a substantive issue-the mitigating defense of adequate provocation. That defense was certainly contested. That is precisely why the judge held the hearing: to determine whether the prosecution or defense had the better arguments on the adequate provocation defense. The prosecution opposed admission of the evidence related to the defense, while Schmidt argued that he had met the threshold showing for admissibility. Schmidt presented part of his side of the case in the judge's chambers, but that fact makes no difference given what the Supreme Court has held to be critical stages. There is no question that the overall hearing was an adversary proceeding. Nothing in the Supreme Court's extensive critical-stage jurisprudence suggests that the hearing became any less critical, or any less of a "trial-like confrontation," when the judge took the accused and his (silenced) lawyer into chambers to question him about the facts supporting the defense.
In addition to confronting the prosecutor's substantive arguments on the disputed provocation defense, Schmidt needed to navigate the "complex legal technicalities" of the "intricate procedural system." Ash , 413 U.S. at 307, 93 S.Ct. 2568. He needed to meet the burden of production that Wisconsin requires for affirmative defenses like adequate provocation: the "some *316 evidence" threshold. If he met that burden at trial, the prosecutor would bear the burden of persuasion and would have to disprove the defense beyond a reasonable doubt. To show before trial that he had "some evidence" of adequate provocation, Schmidt needed to reveal only his best evidence. These are not procedural concepts that a layperson-especially one whose own fate is at stake-is likely to understand, let alone execute. The transcript in this case shows as much. Schmidt's lack of understanding about the burden of production caused him to disclose too much at this stage. In effect, Schmidt did the prosecutor's job for her and converted the ex parte , in camera hearing into a mini-trial on the merits of his defense.
In sum, in this hearing conducted without his counsel's participation, Schmidt not only confronted a complex substantive and procedural question; he was also forced to defend his position on the meaning of the procedural rule after the prosecutor challenged him. This was a critical stage-in this case, actually the most critical stage-of this prosecution. The accused's right to counsel in this inquisitorial hearing did not depend on whether the prosecutor was in the room, or on whether the judge's tone of voice and phrasing of questions were gentle or hostile. What mattered, under clearly established Supreme Court precedent, is that Schmidt was confronting the complex machinery of the criminal justice process on the most critical, disputed, and substantive issue in the case.
2. Potential for Prejudice
For a pretrial confrontation to be a critical stage, it must also have the potential to prejudice the defendant and therefore undermine the integrity of the trial. Wade , 388 U.S. at 227, 87 S.Ct. 1926. The ex parte , in camera hearing had the potential to prejudice Schmidt substantially. The state court's conclusion to the contrary was unreasonable. "Fatal to Schmidt's argument," the Wisconsin court reasoned, the hearing was "supplemental" and "Schmidt had already submitted written offers of proof" in support of his defense. The logic of that rationalization for denying Schmidt assistance of counsel flies in the face of clearly established Supreme Court precedent.
The Sixth Amendment analysis focuses on whether there is a potential for prejudice given what or whom the uncounseled defendant must confront and what counsel could do later to fix the defendant's mistakes. E.g., Ash , 413 U.S. at 313, 317, 93 S.Ct. 2568 ; Coleman , 399 U.S. at 7, 90 S.Ct. 1999 (plurality); id. at 11, 90 S.Ct. 1999 (Black, J., concurring); Wade , 388 U.S. at 227, 87 S.Ct. 1926. In this case, Schmidt was asked to meet the burden of production to preserve his most promising-indeed, his only-defense in mitigation at trial. In this case, no stage was more critical. What happened in chambers settled Schmidt's fate. It reduced "the trial itself to a mere formality." See Wade , 388 U.S. at 224, 87 S.Ct. 1926.
The criminal process is full of pretrial steps that involve both written and oral submissions to the court: to name a few, motions to suppress evidence; motions challenging venue, jurisdiction, or competency to stand trial; and motions asserting selective or vindictive prosecution, or denial of speedy trial rights, or discovery disputes. Counsel's help with the written half of the process does not erase the potential for prejudice in the oral half, let alone justify denying assistance of counsel. To our knowledge, the Supreme Court has never held that having assistance of counsel in part of a critical stage of the prosecution justifies denial of counsel in the rest of it. In this case the judge questioned *317 Schmidt after reviewing the written offers of proof. If the judge had thought the written offers of proof had met the some-evidence threshold, the ex parte , in camera questioning would have been unnecessary. What Schmidt would say in chambers was critical.
Even if Schmidt had met the some-evidence threshold in his written offers of proof alone, his unfocused "rambling narrative" in chambers could have diluted that evidence with details harmful to his defense. At that point in the pretrial process, Schmidt did not need to prove adequate provocation. He needed to provide "some evidence" of it. Schmidt , 824 N.W.2d at 843, citing Head , 648 N.W.2d at 439.
The risk was not only that the judge might lose sight of the elements of adequate provocation or might fail to separate the wheat from the extensive chaff in Schmidt's rambling answers, though those are certainly good reasons for needing counsel in the hearing. There was also a risk that Schmidt would convert the hearing into a mini-trial on the merits of his defense rather than a debate about the burden of production. If Schmidt could have just met the burden of production-and only that burden-he would have had the right to present his evidence and argue his defense to the jury. And the trial judge's oral ruling suggests that this risk might have played out here: "The Court finds that the circumstances that led to the death of Kelly Wing did not involve a provocation and it was not an adequate provocation and denies the motion." That conclusion sounds more like a decision on the merits than a decision on the burden of production.
Finally, Schmidt's counsel could not fix later the harm done by Schmidt's answers. The trial court silenced counsel in the ex parte hearing and ruled on the defense shortly after questioning Schmidt. Because counsel could not later undo the harm to Schmidt, the risk of prejudice at the evidentiary hearing infected his trial.
3. Role of Counsel
The last factor in the critical-stage analysis is whether counsel could have helped Schmidt avoid prejudice at the hearing. There can be no doubt that Schmidt would have benefited from his attorney's help at the hearing. It is a basic tenet of constitutional law that an accused has a right to counsel when he is in custody or after formal proceedings have begun against him because of the risk that he will inadvertently harm his defense. See Miranda v. Arizona , 384 U.S. 436, 466, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (Sixth Amendment guarantees right to counsel at police interrogation to protect defendant against self-incrimination); Massiah , 377 U.S. at 206, 84 S.Ct. 1199 (same in interrogation by government informant). The dangers to Schmidt and the opportunity for his counsel to help him are both evident here.
In Ferguson v. Georgia , 365 U.S. 570, 594-96, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961), the Supreme Court explained the need for counsel in a context very close to this case. At that time, Georgia prohibited the accused from testifying in his own defense. State law allowed the accused to make an unsworn statement to the jury, but he ordinarily had to do so without questioning by his counsel to guide him. The Court held that the defendant had a right to have his counsel question him to elicit his statement. In explaining this conclusion, the Court quoted Chief Justice Cooley, the nineteenth-century jurist from Michigan, in a lengthy passage that fits Schmidt's case well:
But to hold that the moment the defendant is placed upon the stand he shall be debarred of all assistance from his *318 counsel, and left to go through his statement as his fears or his embarrassment may enable him, in the face of the consequences which may follow from imperfect or unsatisfactory explanation, would in our opinion be to make, what the statute designed as an important privilege to the accused, a trap into which none but the most cool and self-possessed could place himself with much prospect of coming out unharmed. An innocent man, charged with a heinous offence, and against whom evidence of guilt has been given, is much more likely to be overwhelmed by his situation, and embarrassed, when called upon for explanation, than the offender, who is hardened in guilt; and if he is unlearned, unaccustomed to speak in public assemblies, or to put together his thoughts in consecutive order any where, it will not be surprising if his explanation is incoherent, or if it over-looks important circumstances.
365 U.S. at 595-96, 81 S.Ct. 756 (emphasis added), quoting Annis v. People , 13 Mich. 511, 519-20 (1865) (reversing conviction where trial judge had not allowed defense counsel to remind defendant he had omitted a material fact from his statement).
Schmidt was not innocent, but the subject of the ex parte , in camera hearing was his only theory of mitigation. And what Ferguson described with the quotation from Annis is just what happened here. Without the guidance of counsel's questioning, Schmidt provided an incoherent account of the circumstances that might have supported his defense in mitigation. (Recall that the Wisconsin Court of Appeals said it was "a close question" whether Schmidt had produced "some evidence" sufficient to present a triable defense of adequate provocation.) Counsel could have helped him organize the facts, present a coherent and legally relevant response, and meet the burden of production. Without counsel acting in that role, "a serious risk of injustice infects the trial itself." Cronic , 466 U.S. at 656, 104 S.Ct. 2039, quoting Cuyler v. Sullivan , 446 U.S. 335, 343, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
B. Assistance of Counsel at the Hearing
Because the hearing was a critical stage in Schmidt's case, the next question is whether Schmidt received the assistance of counsel during it. The Wisconsin Court of Appeals reasoned that Schmidt's counsel was present for the ex parte hearing and could have advised Schmidt and answered any questions he had. Under AEDPA, we presume that this was a finding on the merits. Johnson v. Williams , 568 U.S. 289, 293, 133 S.Ct. 1088, 185 L.Ed.2d 105 (2013). Even assuming AEDPA controls, it is unreasonable to conclude that counsel's silent (and silenced) presence satisfied the Sixth Amendment. See 28 U.S.C. § 2254(d)(1).
The Sixth Amendment guarantees the effective assistance of counsel, of course. Strickland v. Washington , 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ; Cronic , 466 U.S. at 654, 104 S.Ct. 2039 ; McMann v. Richardson , 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The Sixth Amendment is not satisfied when "no actual Assistance for the accused's defence is provided" and, as a result, the prosecution's case is not tested against "the crucible of meaningful adversarial testing." Cronic , 466 U.S. at 654, 656, 104 S.Ct. 2039 (internal quotations omitted). Attorneys can be constitutionally ineffective either because of their own errors or because the government interferes with their performance. Strickland , 466 U.S. at 687, 692, 104 S.Ct. 2052 ; Cronic , 466 U.S. at 658-60, 104 S.Ct. 2039 (categorizing circumstances when government interference *319 with attorney performance violates Sixth Amendment). The Supreme Court has held that the government violates the Sixth Amendment when it interferes to such an extent that "although counsel is available to assist the accused," the "likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct." Cronic , 466 U.S. at 659-60, 104 S.Ct. 2039.
A long line of Supreme Court cases has applied the rule that mere appointment or presence of counsel is insufficient if state action converts counsel's presence into a sham. In Powell v. Alabama , the Court held that "defendants were not accorded the right of counsel in any substantial sense" when the court appointed defense lawyers for the Scottsboro Boys but did not give the lawyers adequate time to prepare for trial. 287 U.S. at 57-58, 53 S.Ct. 55 ; see also Avery v. Alabama , 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377 (1940) ("[T]he denial of opportunity for appointed counsel to ... prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement."). In Ferguson , as noted, the Court found unconstitutional a rule that prohibited defense counsel-though present at trial-from directly examining a defendant who chose to speak in his own defense. 365 U.S. at 596, 81 S.Ct. 756. In Geders , the Court found that "an order preventing petitioner from consulting his counsel 'about anything' " overnight during trial "impinged upon his right to the assistance of counsel." 425 U.S. at 91, 96 S.Ct. 1330. And in Holloway v. Arkansas , the Court found that the "mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee" when the state refused to appoint counsel free of conflicts of interest and "the advocate's conflicting obligations ... effectively sealed his lips on crucial matters." 435 U.S. 475, 490, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Thus, the Court has "uniformly found constitutional error" when counsel was "either totally absent, or prevented from assisting the accused during a critical stage." Cronic , 466 U.S. at 659 n.25, 104 S.Ct. 2039 (emphasis added).
Even comparatively modest government interference with the attorney's ability to exercise judgment can render counsel ineffective and violate the Sixth Amendment. See Herring , 422 U.S. at 863, 865, 95 S.Ct. 2550 (state violated Sixth Amendment by barring defense attorney from giving closing summation in bench trial); Brooks v. Tennessee , 406 U.S. 605, 612-13, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) (state violated Sixth Amendment by requiring that defendant who chose to testify be the first witness). The Court summarized its precedent in Strickland :
That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair. For that reason, the Court has recognized that the right to counsel is the right to effective assistance of counsel.
466 U.S. at 685-86, 104 S.Ct. 2052 (collecting cases; internal quotations omitted).
In this case, Schmidt's counsel was, in the trial judge's own words, "just ... present" and "not saying anything" during the ex parte hearing. The state thus prevented Schmidt's counsel from performing the *320 "role that is critical to the ability of the adversarial system to produce just results." Strickland , 466 U.S. at 685, 104 S.Ct. 2052. Schmidt's counsel was not allowed to speak while the court questioned his client on the most important issue in his defense. It was objectively unreasonable for the state court to conclude that Schmidt's counsel could have provided effective assistance and meaningfully tested the arguments against the provocation defense by "not saying anything." See Cronic , 466 U.S. at 656, 104 S.Ct. 2039, citing Anders v. California , 386 U.S. 738, 743, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) (summarizing Supreme Court precedent requiring counsel acting as an advocate).
In this appeal, the State echoes the state court's suggestion that Schmidt's counsel "could have objected" during the hearing and was "functionally present" to help Schmidt. We find no factual support for these statements. The trial judge told Schmidt-and assured the prosecutor-that Schmidt's counsel would not say anything during the hearing. Once in chambers, the judge reiterated that Schmidt's counsel was not to participate. And throughout the ex parte hearing, Schmidt spoke uninterrupted by his counsel for long enough to fill thirty-five transcript pages. The judge addressed Schmidt directly, not his counsel. Given the judge's ground rules for the hearing, there is no basis for the conclusion that counsel could have objected or advised Schmidt. Doing so would have amounted to contempt of court.
The State also argues that Schmidt could have cured any prejudice by supplementing his offers of proof after the ex parte hearing. The State points to an earlier pretrial hearing when the court announced that it would hold the hearing on the provocation defense and might allow Schmidt to supplement the record "if the Court is not satisfied" at "the end of that" hearing. There are three major flaws in this argument. First, the accused is entitled to the assistance of counsel during the entirety of a critical stage, not just part of it. Second, and more specifically, Schmidt needed counsel's help in confronting the burden of production on a complex factual and legal defense. The prejudice he suffered came from disclosing irrelevant details and diluting the evidence that could support his defense. Any hypothetical opportunity to supplement the record later would not have reversed the damage to Schmidt's case or satisfied Schmidt's right to counsel during the critical hearing itself.
Third, again, the factual record does not support the State's argument. The trial court ruled on the provocation defense immediately after the ex parte proceeding. When Schmidt's counsel mentioned supplementing the record a month later, the judge replied that he had already "ruled on" the defense.
The State also points out that Schmidt's counsel did not object to the judge's ground rules that required counsel to remain silent during the ex parte hearing. (Schmidt's counsel did object to holding the hearing at all, and to the judge's plan to question Schmidt himself, but on Fifth Amendment grounds.) The absence of a Sixth Amendment objection does not matter here. The accused himself may waive the right to counsel, whether for the entire case or for a particular stage of the proceeding, but any waiver must be knowing and intelligent. E.g., Brewer v. Williams , 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (state must prove "intentional relinquishment or abandonment of a known right or privilege" to show waiver of right to counsel at critical stage). There is also a strong presumption against waiver of constitutional rights that preserve a fair trial. Id . ;
*321 Schneckloth v. Bustamonte , 412 U.S. 218, 237-38, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). There is no indication in this record that Schmidt knew he had a right to effective assistance of counsel in the highly unusual ex parte , in camera hearing, let alone that he knew the judge's ground rules would deny him that right or that he agreed to waive the right.
Finally, the State points to the brief recess late in the hearing when the judge made a telephone call. Counsel asked if he might speak to his client during the short recess. The judge said only that counsel could review the written offer of proof summarizing Schmidt's intended defense. This limited opportunity for a brief talk with counsel was not enough to satisfy the Sixth Amendment "in any substantial sense," and to conclude otherwise "would simply be to ignore actualities." Powell , 287 U.S. at 58, 53 S.Ct. 55. As the Supreme Court has observed, the "tensions of a trial for an accused with life or liberty at stake might alone render him utterly unfit to give his explanation properly" when speaking "without the guiding hand of counsel." Ferguson , 365 U.S. at 594, 81 S.Ct. 756 (internal quotations and citations omitted). Schmidt was never guided while explaining his offense and the provocation he claimed. The problems the Supreme Court predicted in Ferguson occurred here. Schmidt's answers to the judge's questions were so unfocused, with so many irrelevant and distracting details and side-tracks, that the judge asked him the same question six times: what was your mental state when you shot your wife? The Sixth Amendment guaranteed him more than a silenced attorney listening to his answers.
When the State denies a defendant counsel at a critical stage, prejudice is presumed. E.g., Bell v. Cone , 535 U.S. 685, 695-96, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) ; Cronic , 466 U.S. at 658-59, 104 S.Ct. 2039. The district court's judgment is REVERSED and the case is REMANDED with instructions to grant the writ of habeas corpus ordering that Schmidt be released or retried promptly, or perhaps, as the State suggested in the district court, that the state court modify Schmidt's judgment of conviction to second-degree intentional homicide and re-sentence him accordingly.

The usual relief in such a case would be to order the State either to release Schmidt or to retry him. A different remedy may be appropriate here. In the district court, the State requested the option to ask the state trial court to modify the judgment of conviction to second-degree intentional homicide and to resentence Schmidt accordingly. In briefing in this appeal, Schmidt says he agrees with that request. On remand, the district court should consider that option, in addition to the usual choices of retrial or release.

The jury also convicted Schmidt of recklessly endangering safety and bail-jumping. He does not challenge those convictions.

By "inquisitorial," we "don't mean it was modeled on the procedures employed by the Inquisition." Henderson v. Wilcoxen , 802 F.3d 930, 931 (7th Cir. 2015). We refer to the "system of proof-taking used in civil law, whereby the judge conducts the trial, determines what questions to ask, and defines the scope and the extent of the inquiry." Inquisitorial System , Black's Law Dictionary (10th ed. 2014). As the Supreme Court has explained: "What makes a system adversarial rather than inquisitorial is not the presence of counsel ... but rather the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and arguments pro and con adduced by the parties." McNeil v. Wisconsin , 501 U.S. 171, 181 n.2, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). Although many countries continue to use inquisitorial systems of factfinding, our Constitution establishes an adversarial system. Cf. Henderson , 802 F.3d at 931 ("In modern usage an inquisitorial hearing is a hearing in open court in which the judge examines the parties to the suit rather than leaving examination to the lawyers, as in our legal system, which is adversarial rather than inquisitorial.").

The Court did not hold that the accused had a right to have his lawyer present for the examination itself, but he had a right to the advice of counsel in deciding whether to submit to it. 451 U.S. at 470 n.14, 101 S.Ct. 1866.