In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-1326

ROBERT LEE HOLLEMAN,

*Plaintiff-Appellant,*

*v.*

DUSHAN ZATECKY, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:16-cv-00305 — **James R. Sweeney, II**, *Judge.*

ARGUED NOVEMBER 6, 2019 — DECIDED MARCH 6, 2020

Before EASTERBROOK, MANION, and BARRETT, *Circuit Judges.*

MANION, *Circuit Judge.* Robert Holleman is the quintessential jailhouse lawyer, and he has achieved notable success in that role. Through prior lawsuits he has been awarded thousands of dollars in damages. In late 2015, in response to Holleman's multitudinous lawsuits, grievances, and an interview he provided to a local newspaper, the superintendent of Pendleton Correctional Facility transferred Holleman to

another prison. The question for us today is whether that transfer violated Holleman's clearly established right to be free from retaliation for protected First Amendment activity, such that his suit can overcome qualified immunity. We hold it did not.

## I.      Background

Holleman was a prisoner at Pendleton Correctional Facility near Anderson, Indiana, from 2012 until November 2015. He alleges he had approximately seven hours of access to the law library weekly and was housed alone rather than sharing space with a cellmate. He also worked as a law clerk for a time while at Pendleton, helping other prisoners file lawsuits and pursue legal remedies. He was highly effective in this role. He has also pursued litigation of his own over the years, generally claiming constitutionally inadequate conditions of confinement. Some of his lawsuits have been successful and at least one resulted in a substantial monetary award.

Holleman recounts a troubled history between himself and the officials at Pendleton—specifically Dushan Zatecky, the superintendent at Pendleton. Holleman alleges multiple instances of retaliation against him spearheaded by Zatecky, including being terminated from his law clerk position, removed from preferential housing, placed in segregation, and subjected to a sham investigation. None of these alleged instances of retaliation forms the basis of the current retaliation suit, but Holleman contends this history is necessary context for his current claim.

Regarding the current lawsuit, the Defendants concede Holleman engaged in protected First Amendment activity on three separate occasions in 2015. The first occurred in March

when Holleman filed a lawsuit against the Defendants and others due to cold conditions at Pendleton. Next, on October 11, Holleman contributed statements to a local newspaper for an article about allegedly poor medical care provided to inmates at Pendleton. Finally, on October 14, Holleman filed a grievance alleging the nutritional value of the lunches provided at Pendleton was inadequate.

Apparently Zatecky had heard enough from Holleman at this point. On the same day Holleman filed his grievance about the lunch program, Zatecky sent an email to Defendant Dick Brown, the superintendent at Wabash Valley Correctional Facility,[1] asking if Brown would be willing to transfer a prisoner to Pendleton in exchange for Holleman. According to Zatecky's own admission, the reason for the transfer was because

> Holleman had written letters to various entities complaining of the conditions at Pendleton Correctional Facility. With the multitude of complaints and grievances it became apparent, due to the age of the facility,[2] the only viable solution was to transfer Offender Holleman to a more modern facility.[3]

---

[1] Wabash Valley is located 30 miles south of Terra Haute, Indiana, and is over 100 miles southwest of Pendleton.

[2] Pendleton was built circa 1922; Wabash Valley was built circa 1990. At least two cell houses at Pendleton, however, were rebuilt after 1996.

[3] (Appendix of Plaintiff-Appellant at 31.)

Zatecky claims to have believed Holleman would benefit from a change of scenery and that the transfer would be in Holleman's best interest.

Brown agreed to transfer a prisoner from Wabash Valley to Pendleton in exchange for Holleman. After being approved by Defendant Michael Osburn, the Indiana Department of Correction ("IDOC") Regional Director, the transfer was completed and Holleman was transported to Wabash Valley on November 20, 2015.

Both Pendleton and Wabash Valley are maximum-security facilities. Holleman was housed in the general population at both prisons and subject to a similar level of restriction at both. Even so, Holleman alleges four adverse consequences of his transfer. First, he claims he witnessed more violence at Wabash Valley than at Pendleton, though he alleges only 25 percent of incidents of violence are reported at Wabash Valley, because the inmates fear retribution from the offenders for "snitching." Holleman claims to have been the victim of violence himself from his new cellmate at Wabash Valley, leaving him with a scar and bruises; however, he did not report this incident. Second, he claims he only had access to the law library at Wabash Valley for four hours per week, as opposed to the seven hours per week he enjoyed at Pendleton. Third, Holleman was housed with a cellmate at Wabash Valley, whereas at Pendleton he had an individual cell. Finally, Holleman alleges that even in the absence of any worsened conditions, a transfer from one prison to another is adverse in and of itself because it disrupts the prisoner's lifestyle and removes him from his accustomed home.

Soon after he arrived at Wabash Valley, Holleman sent a letter to Superintendent Brown. In this letter, he complained

about the retaliatory nature of the transfer and indicated his intention to file this lawsuit. He also described a laundry list of conditions at Wabash Valley that he contended were violations of the inmates' constitutional rights. He said he intended to continue sending letters to newspapers and filing lawsuits at Wabash Valley. He concluded: "I hope that you enjoy my stay here at Wabash as much as I do. I am looking forward to all of the fun times/memories." Despite sending this letter, Holleman ultimately did not file any more grievances or lawsuits while at Wabash Valley (other than initiating this suit).

Viewing the evidence in the light most favorable to Holleman, the district court concluded Holleman had engaged in protected speech and his protected speech had been "a motivating factor in Defendants' decision to take steps to transfer him." *Holleman v. Zatecky*, 2019 WL 285333, at *4 (S.D. Ind. Jan. 18, 2019). However, citing the broad deference owed to prison officials when making administrative decisions and responding to grievances, the district court held "[i]t was not clearly established that transferring Holleman from a facility that he persistently complained about to another facility with the same security level would violate Holleman's constitutional rights." *Id.* at *5. The court noted there were no Supreme Court or Seventh Circuit cases establishing "the right to remain placed in a particular prison or housing unit after complaining that the conditions in that prison violate your constitutional rights." *Id.* Accordingly, the court granted summary judgment in favor of the Defendants. Holleman appeals.

## II.    Discussion

We review a district court's summary judgment decision based on qualified immunity *de novo. Estate of Clark v. Walker*, 865 F.3d 544, 549 (7th Cir. 2017). Qualified immunity is an

affirmative defense, but once it is raised the burden shifts to the plaintiff to defeat it. *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001). To overcome qualified immunity, the facts viewed in the light most favorable to Holleman must "show that the defendant[s] violated a constitutional right" and that "the right was clearly established at [that] time." *Estate of Clark*, 865 F.3d at 550.

Holleman asserts his transfer to Wabash Valley violated his First Amendment right to speak to the media and access the courts without facing retaliation. He argues the district court erred by focusing on the lack of precedent establishing a right to a particular prison placement. Holleman has a strong argument here; after all, the First Amendment protects against retaliation even if the retaliatory action itself does not amount to an independent constitutional violation. In *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996), we held that a prisoner alleging a retaliatory transfer "need not establish an independent constitutional interest in either assignment to a given prison or placement in a single cell, because the crux of his claim is that state officials violated his *First Amendment* rights by retaliating against him for his protected speech activities." Furthermore, "[c]onduct that does not independently violate the Constitution can form the basis for a retaliation claim, if that conduct is done with an improper, retaliatory motive." *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). Thus, the fact that a prisoner does not have a constitutional right to a particular prison placement does not doom Holleman's case. If the transfer was indeed retaliatory, then the violation of Holleman's First Amendment right is sufficient to satisfy this first prong of our qualified immunity analysis. We turn, therefore, to the question of whether the evidence viewed in the light most favorable to Holleman can

support a finding that the transfer constituted First Amendment retaliation.

To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements. First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

The Defendants concede Holleman engaged in protected activity by speaking to the media, filing complaints, and initiating lawsuits. This concession is prudent, since we have held that inmates have a right under the First Amendment "to seek administrative or judicial remedies of conditions of confinement." *Babcock*, 102 F.3d at 276. Thus, the protected activity element is met. That leaves two elements for our consideration: whether his protected conduct was at least a motivating factor in the decision to transfer him, and whether that transfer was adverse.

### 1. Transfer Motivated by Protected Conduct

Holleman contends Zatecky's admissions reveal the transfer was motivated by his protected conduct. Indeed, the district court also concluded "the evidence taken in the light most favorable to Holleman … reflects that his First Amendment activities were a motivating factor in Defendants' decision to take steps to transfer him." *Holleman*, 2019 WL 285333, at *4. Even the Defendants do not contest the causation element with respect to Zatecky, stating simply "Holleman may

have had enough evidence to proceed on the [protected activity and causation] elements" against Zatecky.[4]

We are not convinced that the causation element should be so easily brushed aside, however. It is true: Zatecky plainly stated the reason for the transfer was Holleman's multiple grievances, complaints, and letters. Thus, it can be said that the transfer was *caused* by Holleman's protected activity. But, as the Eighth Circuit has recognized, there is a difference between a transfer "motivated by the *fact* that the inmate sued" and one motivated by "the *nature* of the dispute underlying the lawsuit," even though both would be directly caused by the prisoner's protected activity. *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996); *see also Ward v. Dyke*, 58 F.3d 271, 272, 275 (6th Cir. 1995) (holding a lateral transfer to another prison purposed to "give [the prisoner] a fresh start" and relieve the prison staff from dealing with the prisoner's excessive grievances was not retaliatory). In other words, a transfer initiated to punish a prisoner for engaging in protected activity would satisfy the causation element of retaliation, but a transfer initiated as a rational, justifiable response to the substance of the prisoner's complaint would not.

*Sisneros* is instructive. In that case, the plaintiff prisoner filed numerous grievances and lawsuits following his transfer from a prison in Arizona to one in Iowa. His grievances focused primarily on the Iowa prison's failure to accommodate his language and religious needs. After he filed his grievances and commenced litigation against the prison, he was transferred back to the Arizona prison, which apparently was

---

[4] (Br. of Appellee at 11.) The Defendants contend, however, that the evidence fails to establish causation for all other Defendants. (*Id.* at 23.)

willing to accommodate his language and religious needs. The plaintiff filed suit claiming that second transfer, indisputably a result of his grievances and lawsuits, was retaliatory. The Eighth Circuit rejected that argument. The transfer "was motivated by rational penological concerns" (i.e., the fact that the transfer could remedy the issues of which he complained), "not by the fact that he had filed two lawsuits." *Id.* at 752–53. It was not the prisoner's engagement in protected activity that motivated his transfer; rather, the transfer was in response to the substance of his complaints and motivated by the possibility of remedying those complaints by returning him to Arizona.

We agree with the Eighth Circuit's reasoning. Establishing the causation element of retaliation requires a showing that the *fact* of the plaintiff's engagement in protected activity was a motivating factor of the alleged adverse action, not merely that the *substance* of the plaintiff's complaint motivated a response the plaintiff did not particularly like. To hold otherwise would absurdly result in requiring prison officials to respond to every grievance by enacting the prisoner's preferred solution, rather than allowing officials to exercise their own judgment. Holleman must show a reasonable factfinder could conclude his transfer was motivated by the fact that he engaged in protected activity, and not merely motivated by the substance of his complaint.

Holleman argues the contentious history between himself and the officials at Pendleton (principally Zatecky) demonstrates his transfer was motivated by a desire to exact revenge rather than a rational response calculated to remedy his grievances. According to Holleman, Zatecky's justification for the transfer—that a change of scenery and newer facility would

benefit Holleman—was pretextual. To prove this justification was pretextual, he argues that the transfer to Wabash Valley could not have remedied his complaints about Pendleton: he complained about the inadequacies of medical care at Pendleton, but the IDOC uses a single medical care provider across all its facilities. Therefore, in Holleman's view, a move to Wabash Valley could not improve this condition, so Zatecky's justification for the transfer was pretextual on its face.

This pretext argument, however, falls short of supporting a finding that the transfer was based on a retaliatory motive. The fact that the same medical provider is responsible for medical care at both facilities does not mean there could be no improvement in care at a different facility over 100 miles away, presumably with different medical personnel on staff.[5] Although it was Holleman's opinion that the source of his problems was the medical provider and that a transfer would not help matters, the Defendants were entitled to disagree. Furthermore, Holleman had also complained about cold conditions and the lunch program at Pendleton—he offers no evidence or argument that those conditions could not be improved by a transfer to the newer Wabash Valley facility.

For these reasons, Holleman's arguments fail to overcome the significant deference owed to the Defendant's non-retaliatory justification for the transfer. We have recognized the Supreme Court's express "disapproval of excessive judicial involvement in day-to-day prison management," *Babcock*, 102

---

[5] Holleman only alleges that the same medical provider operates at all IDOC facilities: he does not allege or provide evidence that both facilities are served by the same medical personnel. We also note the vast distance between the two facilities makes it likely that each has a separate staff.

F.3d at 275 (quoting *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995)), which "often squander[s] judicial resources with little offsetting benefit to anyone," *Sandin v. Connor*, 515 U.S. 472, 482 (1995). Accordingly, we owe deference to prison officials' decisions when responding to grievances and maintaining order in a volatile environment, and to the justifications offered for those decisions. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); *Babcock*, 102 F.3d at 275 ("We should afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory.") (quoting *Pratt*, 65 F.3d at 807) (internal quotation marks omitted). We are not super-wardens who sit to critique the efficacy or wisdom of prison management choices.

Holleman complained about several inadequate conditions at Pendleton, and the Defendants responded by transferring him to Wabash Valley. Even taking the facts in the light most favorable to Holleman, they do not support a finding that the transfer was motivated by the *fact* that he engaged in protected activity rather than the *substance* of his complaints. This alone is enough to doom his claim because it means he cannot establish the causation element of retaliation.

2.  Adverse Action

Independent of whether his engagement in protected activity motivated the transfer, Holleman's claim also fails to establish the transfer was adverse.

The standard for determining whether an action is sufficiently adverse to constitute retaliation is well established: it must be "likely [to] deter a person of ordinary firmness from continuing to engage in protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). This is an objective standard; it does not hinge on the personal experience of the plaintiff. Furthermore, the harsh realities of a prison environment affect our consideration of what actions are sufficiently adverse. "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse." *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999).

In *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996), we stated "[i]f a prisoner is transferred for exercising his own right of access to the courts, or for assisting others in exercising their right of access to the courts, he has a claim under § 1983." Common sense, however, tells us this statement cannot support a blanket rule that *any* transfer motivated by the plaintiff's First Amendment activity is sufficiently adverse to constitute retaliation. A transfer that objectively improves the prisoner's condition, for example, would not deter a person of ordinary firmness from engaging in protected activity. Our question today is whether the transfer in this case—from one maximum-security facility to another maximum-security facility—was sufficiently adverse. We must look further than the quoted statement from *Higgason* to answer it.

A brief examination of other cases in which a transfer decision was held to be retaliatory demonstrates why Holleman's transfer does not rise to that level. In *Babcock v. White*, we held a transfer decision made with a retaliatory motive could be a violation of the prisoner's First Amendment right even if the transfer decision itself did not independently violate the Constitution. 102 F.3d at 275. However, that case involved a retaliatory decision to delay transferring the plaintiff out of a life-threatening housing situation where he was exposed to members of a group who had sworn to kill him. *Id.* at 268–70. In *Higgason*, the plaintiff alleged he was transferred out of the prison's general population into a segregated housing unit which placed significantly more restrictions on his freedom. 83 F.3d at 808-09. And in *Buise v. Hudkins*, we held a prisoner's transfer from a minimum-security facility to a maximum-security facility could amount to retaliation. 584 F.2d 223, 226, 229–30 (7th Cir. 1978), *abrogated in part on other grounds by Abdul-Wadood v. Duckworth*, 860 F.2d 280, 285 (7th Cir. 1988). These cases all present serious changes of circumstance that would likely deter a person of ordinary firmness from continuing to engage in protected activity.

By contrast, Holleman was transferred from the general population of one maximum-security facility to the general population of another maximum-security facility. The Defendants did not transfer him into, or delay transferring him out of, a life-threatening situation. Holleman alleges no increase in restrictions imposed on him at Wabash Valley, other than minor differences in the policies and conditions of the facilities. The changes in circumstance he does allege—less law library time, being made to share a cell, and having to witness more violence—do not transform the transfer into an adverse action because there is no evidence the Defendants

knew the transfer would result in these incidental changed conditions. Regarding increased violence, Holleman alleges only 25 percent of the violence at Wabash Valley is reported. He also provides no evidence of the amount or kind of reported violence at Pendleton for us to be able to compare the two.

Besides those changed conditions, Holeman presents one other argument. Although a prisoner does not have a constitutionally protected interest in his assignment to a particular prison, *Meachum v. Fano*, 427 U.S. 215, 225 (1976), Holleman asserts he nevertheless suffered a severe deprivation when he was moved from his "home" at Pendleton to Wabash Valley. He argues such a move upsets a prisoner's accustomed lifestyle and deprives him of human connections, job stability, and a familiar environment. That is undoubtedly all true.

However, as we have said, prisoners are subjected to harsher conditions and environments than ordinary citizens. No prison is an ideal home, and it is unlikely to be a home of anyone's choice. *See Giles v. Godinez*, 914 F.3d 1040, 1054 (7th Cir. 2019) ("Prison is, by its very nature, an unpleasant place to be."). The difficulty of living under the strict regimen of a prison includes by definition a loss of choice in one's home. *See Meachum*, 427 U.S. at 224. Thus, the disruption inherent in a transfer to a different facility does not by itself make the transfer adverse. Without some additional aggravating factor, such as relocation to a much more restrictive or dangerous environment, a transfer is not likely to deter a person of ordinary firmness from continuing to engage in protected conduct.

Because Holleman has failed to meet his burden of proof to show the transfer was motivated by his engagement in

protected activity and sufficiently adverse, we hold his First Amendment right to be free from retaliation was not violated. Since his right was not violated, there is no need to analyze whether it was clearly established.

### III.    Conclusion

Holleman lodged multiple and continued grievances and spoke out to the media regarding conditions at Pendleton. He likely desired the Defendants to respond by adjusting those conditions, or perhaps he hoped for another monetary award in court. Instead, the Defendants responded by moving him to a different prison. Although it was not the response Holleman sought, it was not retaliation either. Accordingly, we AFFIRM the decision of the district court.