**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 17, 2020[*]
Decided August 19, 2020

*Before*

DIANE S. SYKES, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 19-3304

| | |
|---|---|
| PAUL D. AMMERMAN, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 17-cv-193-wmc |
| KALEB SINGLETON, *et al.*, *Defendants-Appellees*. | William M. Conley, *Judge*. |

## O R D E R

Paul Ammerman, a Wisconsin inmate, contends that prison staff inadequately treated his mental health and, when he complained, they transferred him to a maximum-security prison as retaliation. The district court entered summary judgment for the defendants. It concluded that prison officials provided Ammerman with

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

adequate treatment, albeit not the treatment that he preferred, and no evidence suggested that his complaint led to his transfer. We agree and affirm.

During his brief time at New Lisbon Correctional Institution (less than six months), Ammerman met often with psychological staff. At his first three meetings, he reported anger and depression and asked for medication. The psychologists decided not to refer his request for drugs to doctors, counseling him on non-pharmaceutical coping techniques instead. Ammerman protested that he previously had been diagnosed with antisocial-personality disorder and dysthymia (now known as persistent depressive disorder). He provided some records from his former psychologists. None stated that he needed medication. The staff refused to accept the records anyway because they were more than four years old and not certified as accurate. But the staff gave him a form to complete so that the prison could obtain certified copies of his full medical records. (The record does not reflect whether Ammerman ever completed this form.)

At Ammerman's fourth mental-health appointment, he met with Dr. Kaleb Singleton, a psychological associate at the prison,[1] and revealed a violent plan that led to his placement in restrictive housing. Ammerman told Dr. Singleton that he planned to stab two correctional officers, that he was depressed, and that he wanted to return to his previous, maximum-security prison, where he had a job and staff treated him better. Ammerman also wrote Dr. Singleton after the appointment, asking him to review the records from his past psychologists and prescribe drugs. Dr. Singleton refused Ammerman's request for drugs, diagnosed Ammerman with antisocial-personality disorder (not depression), and counseled Ammerman on coping techniques. He also wrote a conduct report about Ammerman's plan to stab the officers. This report led prison officials to move Ammerman to restrictive housing. While there, Ammerman told the prison's security director that psychological staff were refusing to treat his anxiety and depression. The security director, who was not a medical professional, told Ammerman to continue working with medical staff.

Ammerman was eventually transferred to a maximum-security prison. Before the transfer, Dr. Singleton visited Ammerman in restricted housing. The parties dispute what happened at that meeting, but afterwards Dr. Singleton wrote a second conduct report, accusing Ammerman of threatening him. That same day, the prison's complaint

---

[1] Singleton holds a doctor of psychology degree (PsyD) from California Southern University, and thus uses the title "Dr." even though he is not a medical doctor.

examiner received a grievance from Ammerman. In it, Ammerman complained about Dr. Singleton's past refusal to prescribe drugs. The examiner interviewed Dr. Singleton and reviewed Ammerman's conduct reports. After this investigation, the examiner concluded that Ammerman's mental-health treatment was adequate and dismissed the grievance. (The examiner noted that Dr. Singleton had already written both reports when the examiner conducted the investigation.) At this point, Ammerman had received multiple conduct reports, including the two from Dr. Singleton, over his six months at the prison. So the security director requested a review of Ammerman's medium-security classification. After that review, the Wisconsin Department of Corrections transferred Ammerman to a maximum-security prison.

This suit came next, asserting two claims: First, in Ammerman's view, by restricting him to non-pharmaceutical treatments, the psychologists and security director were deliberately indifferent to his mental health, in violation of the Eighth Amendment. Second, Ammerman alleges, Dr. Singleton and prison staff lied in the second conduct report to retaliate against Ammerman for his grievance about drugs, and the security director used that report as a pretext for his transfer, both violations of the First Amendment. The district court granted summary judgment for the defendants. It ruled that, although Ammerman's mental-health issues were serious, the Eighth Amendment claim failed because nothing suggested that non-pharmaceutical treatment was unreasonable, and the security director was entitled to defer to the psychologists' judgment about that course of treatment. The First Amendment claim failed because Ammerman could not show that Dr. Singleton, or staff who assisted him, were aware of Ammerman's grievance when Dr. Singleton wrote the second conduct report. Thus, the grievance could not have motivated the drafting of the report or the later transfer.

On appeal, Ammerman first contends that the district court erred in entering summary judgment on his Eighth Amendment claim. A prison official is liable for violating the Eighth Amendment if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Although the parties dispute on appeal whether Ammerman has provided evidence of a serious medical condition, we assume for the sake of discussion that his mental disorders pose a substantial risk to his health. Ammerman argues that the defendants were deliberately indifferent to that risk for three reasons. First, "many psychologists will agree that medication is necessary for depression"; second, the defendants spent insufficient time coaching him on coping techniques; and third, they avoided obtaining his old records to dodge information about his prior dysthymia diagnosis and need for drugs to treat it.

Ammerman does not cite any evidence to support his assertions that other psychologists would have prescribed him antidepressants or spent more time counseling him. Even if he were right that another psychologist might have recommended drugs for depression, mere differences of opinion about treatment options among medical professionals are insufficient to support a claim for deliberate indifference. *Burton v. Downey*, 805 F.3d 776, 786 (7th Cir. 2015). When the defendants are medical professionals, as the psychologists are here, we defer to their treatment decisions unless the plaintiff presents evidence that "no minimally competent professional would have so responded under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (quoting *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008)). And Ammerman has not provided any evidence that, when the psychologists worked with him at least four times in six months and counseled him each time on non-pharmaceutical coping techniques, they ignored minimal professional norms.

We also reject Ammerman's argument that defendants refused to learn about his prior diagnoses. Although officials may not escape liability by intentionally avoiding knowledge of a risk to an inmate, *Farmer*, 511 U.S. at 843 n. 8, the defendants here *tried* to get information about Ammerman's medical history. The psychologists asked him to complete a form so they could obtain certified copies of his past records. And in any event, nothing in the partial records that Ammerman supplied to the district court suggested that defendants' treatment plan was insufficient. Although his prior psychologists diagnosed him with dysthymia, Ammerman provides no evidence that he ever received drugs for that disorder or obtained other treatment beyond that provided by the defendants. No reasonable jury could thus conclude that defendants' treatment decisions were "such a substantial departure from accepted professional judgment … as to demonstrate that the person responsible did not base the decision on such a judgment." *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc) (quoting *Cole v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996)).

Finally, Ammerman contends that the district court erred in entering summary judgment on his retaliation claim. He observes that the court ruled there was a genuine dispute regarding whether Dr. Singleton lied when writing the second conduct report. But even if Dr. Singleton fabricated the allegations there, Ammerman still had to show that his grievance motivated Dr. Singleton to lie. See *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). He furnished no such evidence. To the contrary, the complaint examiner received Ammerman's grievance the same day that Dr. Singleton wrote the conduct report. Moreover, the examiner noted that Dr. Singleton had already written the report when the examiner interviewed him. The only reasonable inference is that

Dr. Singleton wrote the report *before* the examiner told him about the grievance. Ammerman replies that the examiner may have notified Dr. Singleton as soon as the examiner received the grievance, before the interview and before Dr. Singleton wrote his report. But Ammerman has adduced no evidence in support of that speculation. And speculation is insufficient to survive summary judgment. See *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014).

                                                                        AFFIRMED