**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 18, 2022[*]
Decided February 22, 2022

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-2487

| | |
|---|---|
| MICHAEL OLIVER, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 17-CV-00206-NJR |
| DOUGLAS LYERLA & MINH SCOTT, *Defendants-Appellees.* | Nancy J. Rosenstengel, *Chief Judge.* |

**O R D E R**

Michael Oliver, an Illinois prisoner, sued correctional officers at two prisons for violating his constitutional rights. The district court severed his action, separating the allegations between the different prisons. In this case, the court allowed Oliver to proceed on a First Amendment claim against two officers from the Menard Correctional

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Center and ultimately entered summary judgment in their favor. On appeal, Oliver challenges that decision as well as the severance. We affirm.

Oliver was transferred from Pinckneyville Correctional Center to Menard and initially placed in a medium-security unit. Some correctional officers at Menard had family members who worked at Pinckneyville. We recount the events at Menard in the light most favorable to Oliver and draw reasonable inferences in his favor. *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 643 (7th Cir. 2020).

Oliver uses the honorific "King" before his name. After doing so on his visitor list at Menard, Sergeant Minh Scott verbally harassed him about it. When Oliver asked another officer for grievance forms, Scott brought them instead, saying: "I double dog dare you to file those grievances." Oliver filed a grievance a short time later complaining that Scott "expressed hostility" toward him because he used "King."

When Oliver went to Major Douglas Lyerla's office to discuss the grievance, Lyerla threatened to move Oliver to a maximum-security unit if he did not stop referring to himself as "King Michael Oliver." Oliver was eligible for placement in either a medium- or maximum-security unit, and he was in fact transferred to maximum security the next day. Menard's Placement Office Supervisor at the time attested that Oliver's transfer appeared to be routine. Oliver suffered various restrictions after the transfer: loss of a daily shower, telephone access, recreation time, job opportunities, and more. It is unclear if these restrictions were incidental to Oliver's maximum-security placement or if any were specially directed at Oliver.

Oliver brought this suit under 42 U.S.C. § 1983. His complaint divided the officer-defendants by prison and alleged constitutional violations stemming from his time at Pinckneyville and Menard. He asserted that his mistreatment at each facility was related because the officers knew each other and were conspiring against him. At screening under 28 U.S.C. § 1915A, the district court concluded that his claims against the groups of defendants were distinct and severed the claims against Scott, Lyerla, and Butler, Menard's warden, into this case. The court allowed Oliver to proceed on a First Amendment retaliation claim against Lyerla and Scott. After discovery, the court entered summary judgment for the defendants. It ruled that Oliver lacked evidence that he was punished for protected speech and that he did not dispute the evidence that his transfer was routine and, therefore, not retaliatory.

Oliver first challenges the district court's decision to sever his lawsuit into two cases. He argues that the claims against the Pinckneyville defendants should have

remained with those against the Menard defendants because of a conspiracy between the two and, further, that the Pinckneyville case should not have been dismissed. The latter issue is not properly before us, however: the Pinckneyville claims were dismissed after being severed, so any appeal must be filed in that separate case.

As for the severance, which we review for an abuse of discretion, the district court permissibly severed Oliver's complaint. *See Gaffney v. Riverboat Servs.*, 451 F.3d 424, 442 (7th Cir. 2006). Defendants can be joined in one action if they were all involved in the same transaction or occurrence. FED. R. CIV. P. 20(a)(2)(A). We have instructed courts to dismiss improperly joined defendants or sever complaints like Oliver's, particularly when the plaintiff is subject to the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b); *see also Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Oliver's allegations against the Pinckneyville defendants do not involve the Menard defendants, and vice versa. Oliver argues that he alleged a conspiracy that spanned the prisons. But his bald speculation based on purported familial relationships among the prisons' staff members does not plausibly connect the two sets of defendants with respect to the conduct at issue. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Severance, then, was proper. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

Oliver next challenges the summary judgment in favor of the officers; we review that decision de novo. *Flexible Steel Lacing Co.*, 955 F.3d at 643. Oliver first contends that his First Amendment claim based on Scott's "visiting list retaliation" should have survived summary judgment. We need not decide whether using an honorific on prison paperwork is protected activity because Oliver's claim fails on other grounds. For the claim to survive summary judgment, Oliver needed evidence that Scott's reaction would chill protected conduct. *See Douglas v. Reeves*, 964 F.3d 643, 647–48 (7th Cir. 2020). But the only misfeasance that Oliver alleges followed his use of "King" on the list—Scott's "double dog dare" comment—was unlikely to do so. There was no threat of a violent reprisal or any concrete adverse action, so we cannot say that Oliver suffered a repercussion. *Id.* ("He needed to point to a deprivation with some significant deterrent effect.") Scott's comment may be inappropriate, but it does not rise to a constitutional violation. *See Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).

Oliver also argues that summary judgment was improper on the claim he calls "the grievance retaliation": his transfer from a medium- to maximum-security area and subsequent loss of a daily shower, telephone access, recreation time, and job opportunities. We will assume—as the parties do—that Oliver engaged in conduct protected by the First Amendment when he filed his grievance complaining of Scott's

harassment. *See Herron v. Meyer*, 820 F.3d 860, 863–64 (7th Cir. 2016). Judgment for the defendants was nevertheless proper, though not for the reasons the appellees argue.

Oliver did not provide any evidence that Scott or Lyerla initiated his transfer, let alone that they did so to punish him for his grievances. Lyerla threatened to transfer Oliver if he kept using "King," and he was indeed transferred the next day. But there is no evidence that Oliver used "King" again after the threat. Further, Scott and Lyerla presented evidence showing that Oliver's transfer was "routine," and Oliver did not show that Scott and Lyerla even had the authority to initiate a transfer. The officers' evidence on this point is thin, and an adverse action closely following protected conduct can be evidence of retaliation. *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019). But summary judgment requires moving past the pleadings, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and temporal proximity alone is rarely enough to defeat summary judgment. *Cf. Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018).

Because there is no evidence of causation, we need not address whether the intra-prison transfer, if initiated in response to protected conduct, was sufficiently punitive to violate the First Amendment. Two points merit discussion, however.

First, the appellees argue that there was no retaliation because Oliver's transfer was not a serious change in circumstances, especially within a prison, so it would not deter protected activity. This conflates a First Amendment claim with a due process challenge to a prison transfer. Although changes in conditions must be "atypical and significant" to create a liberty interest in a prison assignment, *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005), milder consequences can still deter protected speech and violate the First Amendment. *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021).

Second, the appellants argue that losing daily showers, recreation time, telephone access, and more simply reflect the reality that prison is "an unpleasant place to be," and that prisoners must endure more before claiming a constitutional violation. *See Giles v. Godinez*, 914 F.3d 1040, 1054 (7th Cir. 2019). We have held that disruptions incidental to transfers do not, without more, make a transfer adverse. *Holleman v. Zatecky*, 951 F.3d 873, 880–81 (7th Cir. 2020) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)). But that is not to say that prisoners are subject to a heightened standard to prove retaliation. *See Thaddeus-X*, 175 F.3d at 398.

Prisoners making claims like Oliver's must show that they were punished for their speech; that punishment need only be as severe as necessary to chill future conduct. *See Douglas*, 964 F.3d at 647–48. We ask if a prisoner suffered horrific

conditions beyond the expected unpleasantness of prison life when addressing claims about prison conditions under the Eighth Amendment. *Giles*, 914 F.3d at 1051. The appellees did not show that Oliver's losses were incidental to his transfer. If they were targeted at Oliver, they could have supported his First Amendment claim. *See Holleman*, 951 F.3d at 878. But his inability to demonstrate any causal link to these defendants suffices to defeat the claim.

AFFIRMED