NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 9, 2022[*]
Decided November 9, 2022

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 22-1869

| | |
|---|---|
| AARON LINDH, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 21-C-801 |
| | |
| TONIA MOON, | William C. Griesbach, |
| *Defendant-Appellee.* | *Judge.* |

**O R D E R**

Wisconsin prisoner Aaron Lindh appeals the dismissal of this suit under 42 U.S.C. § 1983, asserting that prison officials moved him from a single to a double cell in retaliation for lawsuits and complaints he filed against correctional staff. As relevant to this appeal, the district court dismissed his claims against most of the defendants

---

[*] We have agreed to decide the case without oral argument because the appellant's brief and the record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

because no reasonable inference could be drawn from Lindh's allegations that any of them took steps that constituted retaliation. We affirm.

We recount the background as alleged in the complaint, accepting the allegations as true and giving Lindh the benefit of reasonable inferences. *Milchtein v. Milwaukee Cty.*, 42 F.4th 814, 819 (7th Cir. 2022). Lindh has been incarcerated at Waupun Correctional Institution since 1999, mostly in a single-occupancy cell. But since 2019, he has been moved to a double-occupancy cell on three occasions—the third of which gave rise to this lawsuit.

In spring 2021, Waupun underwent a reorganization that substantially reduced the number of available single cells. The warden explained to the inmates that single cells would be reassigned by priority, based on "medical, psychological, or security concerns," and then seniority (i.e., who had been housed in a single cell for the longest time). Lindh thought he was near the top of the seniority list, but he was transferred to a new cell hall and assigned a double cell. Lindh believes that the cell assignment was in retaliation for previous complaints and lawsuits that he had filed against prison officials. Lindh previously had filed two civil-rights lawsuits against Waupun staff members: The first concerned another double-cell assignment after he had returned from the high-security unit, and the second followed his denial of phone access after he had exceeded his call quota. His dissatisfaction with these developments was the subject of multiple grievances he filed.

He also filed grievances over his new housing placement—grievances that, he maintains, led prison staff to retaliate against him further by refusing to move him to a single cell. Lindh first wrote a letter to the warden and copied the security director, highlighting his seniority and asserting that his transfer must have been in retaliation for lawsuits and grievances. The security director replied that the inmates already had received an explanation for the cell-assignment process; he emphasized that "[r]etaliation I can assure you is not in this process." Lindh also filed three grievances over his cell assignment with Tonia Moon, the prison's complaint examiner, but she rejected each of them, explaining that his housing placement was an administrative decision not subject to review. Later, Lindh sent another letter to the warden; in response, the security director instructed Lindh to direct his concerns to the "movement officer" who was responsible for housing assignments. A few weeks later, Lindh was relocated to a single cell for quarantining before a medical procedure. Afterward, he was permanently assigned to a single cell. His time in the double cell totaled about two months.

Lindh then sued various prison officials (Moon, the warden, and multiple lieutenants and sergeants) for violating his First Amendment rights when they denied him a single cell in retaliation for the lawsuits and grievances he filed against them.

The district court screened Lindh's complaint, *see* 28 U.S.C. § 1915A(b), and dismissed the claims against most of the defendants for failure to state a claim. With regard to the claims against the warden and the security director, the court explained that only alleged involvement of these defendants was telling Lindh to direct his cell-assignment issue to the prison's movement officer. As for the claims against the remaining prison officials, the court could not infer from Lindh's complaint that these defendants were aware of his prior suits or grievances, such that their actions could have been retaliatory. The court permitted Lindh to proceed on his claim against Moon, concluding that his allegations that she refused to process and review his complaints were "sufficient, but barely" to state a First Amendment claim.

The court later entered summary judgment for Moon on the basis of exhaustion. The court found it undisputed that Lindh never filed a grievance raising the retaliation claim against Moon at issue here.

On appeal, Lindh challenges only the substance of the district court's screening order. He argues that he adequately stated a retaliation claim by alleging a plausible link between his protected speech and the prison officials' acts.

The district court rightly dismissed Lindh's claims against these defendants. Even if we assume that Lindh's prior lawsuits and grievances are protected activities, *see Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020); *but see Herron v. Meyer*, 820 F.3d 860, 864 (7th Cir. 2016) (questioning whether all grievances are protected speech), Lindh's threadbare allegations do not suggest how the warden and security director were required to intervene in his particular cell assignment when it was not their job to do so, *see Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009), or how the remaining defendant prison officials would have known about his prior lawsuits and grievances, let alone played a role in his cell placement based on their knowledge of such activity. The allegations in the complaint were too barebones for us to see a plausible connection between Lindh's protected speech and any alleged overstepping by these defendants. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Zimmerman v. Bornick*, 25 F.4th 491, 492–93 (7th Cir. 2022).

Lindh does not contest the court's entry of summary judgment for Moon on exhaustion grounds, so he has waived any challenge to it. *See Bernard v. Sessions*, 881 F.3d 1042, 1048 (7th Cir. 2018).

AFFIRMED